**STATE of Missouri, Respondent,**

v.

**Dennis L. FRANKLIN, Appellant.**

No. WD 46477.

Missouri Court of Appeals, Western District.

June 1, 1993.

James L. McMullin, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Aundreia R. Alexander, Asst. Atty. Gen., Jefferson City, for respondent.

Before FENNER, P.J., and ULRICH and SPINDEN, JJ.

SPINDEN, Judge.

A jury convicted Dennis Franklin of second degree murder for the death of his three-and-one-half year old son, Joshua. He was sentenced to 20 years in prison. Franklin appeals, claiming that the trial court erred in denying his motion for judgment of acquittal at the close of all the evidence because the state failed to present substantial evidence to prove his guilt beyond a reasonable doubt. He also asserts that the trial court erred in allowing the state to submit evidence that Joshua was malnourished.[1] We affirm.

The record, viewed in a light most favorable to the verdict, establishes that on June 4, 1991, at 10:27 P.M., police officers responded to a "911" call from Franklin's home. When they arrived at the home, Officer Wood saw Franklin administering CPR on Joshua. Joshua, however, exhibited no signs of life. Wood noticed a bruise on the right side of Joshua's cheek and temple, bruises on his chest, and an open wound that was partially scabbed on the back of his left hand.

When Wood asked Franklin what happened, Franklin stated that at around 5:00 P.M. he was in the kitchen when he heard something falling down the stairs. Upon investigation, he saw Joshua lying toward the bottom of the stairs and his bicycle at the top of the stairs. Franklin said that Joshua was fully conscious and moving around. He later put Joshua to bed. When he woke up at about 9:30 P.M., Joshua was cold and not breathing.

Later, at police headquarters, Detective Rickey Pilgrim questioned Franklin after he had been read his *Miranda* rights. At first, Franklin relayed the same story to Pilgrim as he did to Wood, but when Pilgrim told Franklin that it appeared that Joshua had been beaten, Franklin changed his story.

He told Pilgrim that he had lost his temper that afternoon when Joshua wet his pants while sitting in the kitchen on a chair. He said he hit Joshua in the face with the heel of his open hand. Joshua fell to the floor, and Franklin picked him up and put him back in the chair. Joshua was crying, and Franklin hit him again. When Joshua continued crying, Franklin took him upstairs to his bedroom and struck Joshua again across the back, buttocks and side and put him to bed. At around 3:00 P.M., Joshua wanted water, so Franklin gave him water and fed him. Joshua complained of a stomach ache and vomited. Franklin and Joshua went to sleep. When Franklin awoke around 9:00 or 9:30 P.M., he discov-

---

1. In his brief, Franklin cites three cases under each of his points relied on; however, in the argument portion of his brief he failed to show how these cases supported his position. His argument, therefore, is unsupported by any citation of authority which would support his appeal, except for the "abstract" citation of authority in his points relied on. Rule 84.04(d) con-templates the citation of some specific governing or persuasive authority indicating error. *Welch v. Western Casualty and Surety Company,* 567 S.W.2d 743, 748 (Mo.App.1978). Although it is not this court's duty to become Franklin's advocate, in the interest of justice we will consider Franklin's argument on its merits.

ered that Joshua was not breathing and was cold and stiff.

After giving Pilgrim a verbal statement, Franklin agreed to give a video statement. The video statement was consistent with what he had told Pilgrim. In the statement, Franklin acknowledged that he had "whooped" Joshua too hard.

Dr. Shelly L. Tepper, a certified anatomic, clinical, and forensic pathologist, conducted an autopsy on Joshua on June 5, 1991. She found bruises on Joshua's right cheek, right ear, four around the left eye, the left side of the jaw, the top of the back of the head, the left side of the chest, seven along the right rib margin, the left knee, three on the back, the back of the left arm, the back of the left forearm, the back of the left hand, two on the back of the right forearm, the left calf, and numerous areas of scarring on the back of the legs and buttocks.

In her internal examination of Joshua, she found two more areas of bruising on the top of the left buttocks, three rib fractures, a tear in the early part of the small intestine (jejunum), scattered bruising of different parts of the intestines, and blood clots in the fibrovascular tissue of the intestine. Tepper found bleeding into the retroperitoneum, the area of the kidneys and pancreas, and bleeding in the left adrenal gland, the endocrine gland which is atop each of the kidneys. She also found bruising or bleeding into the scalp and a small tear on the lip and bleeding.

From testing, she determined that the injuries varied from less than three days old to older. She concluded that the tear to the small intestine and the retroperitoneal hemorrhage were recent injuries. Some marks on Joshua's body were characteristic of strikes by a belt, strap, electrical cord, or some kind of looped object, and one mark was characteristic of a cigarette burn.

The cause of Joshua's death was peritonitis due to a tear in the small intestine caused by a blunt impact to the abdomen. Peritonitis is an inflammation of the surface of the bowel and the anterior abdominal wall. Tepper said that the injury was consistent with the child's being hit forcefully in the stomach by an adult fist and with Franklin's statement about where he hit Joshua and the amount of force he used. She also testified that the fourth rib fracture and the hemorrhages to the kidneys and the adrenal area were consistent with Joshua's being hit as Franklin described.

Tepper opined that the injuries were not consistent with ordinary discipline. She stated that the symptoms of stomach aches, wanting water, vomiting, and crying were all consistent with internal hemorrhages. Medical intervention at the first sign of stomach distress could have saved Joshua's life.

Tepper also testified, over Franklin's objection, that Joshua was malnourished and that his height and weight were reduced for his age. She observed that Joshua's hair was extremely brittle and detached easily from his head, his body fat directly beneath the skin was extremely thin and bright orange. His thymus was unusually small. All of these indicated malnutrition.

Franklin contends the trial court erred in denying his motion for judgment of acquittal at the close of all the evidence because the state failed to present substantial evidence to prove his guilt beyond a reasonable doubt. He argues that the evidence that he struck Joshua with his open hand to discipline him and that he spanked him two or three times on the buttocks does not show that he intended to cause Joshua serious physical injury or death. We disagree.

When reviewing the sufficiency of evidence, we consider all the evidence and its inferences in a light most favorable to the verdict, and we reject all contrary evidence and inferences. *State v. Sladek*, 835 S.W.2d 308, 310 (Mo. banc 1992). We neither weigh the evidence nor determine its reliability or the witnesses' credibility. *State v. Hamilton*, 817 S.W.2d 8, 11 (Mo. App.1991). The jury is the sole judge of the witnesses' credibility, and it determines the appropriate weight to be given the evidence. Our review is limited to determin-

ing whether the jury had substantial evidence from which to find the defendant guilty beyond a reasonable doubt. *State v. Dulany,* 781 S.W.2d 52, 55 (Mo. banc 1989). "Substantial evidence is evidence from which the trier of fact reasonably can find the issue in harmony with the evidence." *State v. Burns,* 795 S.W.2d 527, 529–530 (Mo.App.1990).

To find Franklin guilty of second degree murder, the jury had to believe beyond a reasonable doubt that Franklin caused Joshua's death and that Franklin intended to cause Joshua serious physical injury. Section 565.021, RSMo 1986. Intent may be established by circumstantial evidence. A jury may consider indirect evidence and inferences reasonably drawn from the circumstances surrounding the incident to establish intent. *State v. Turner,* 623 S.W.2d 4, 7 (Mo. banc 1981), *cert. denied,* 456 U.S. 931, 102 S.Ct. 1982, 72 L.Ed.2d 448 (1982); *State v. Abercrombie,* 694 S.W.2d 268, 271 (Mo.App.1985). A jury can infer intent to cause physical bodily harm when "under the circumstances, the prohibited result may reasonably be expected to follow from a voluntary act, irrespective of any subjective desire on the part of the offender to have accomplished the prohibited result." *State v. Kincade,* 677 S.W.2d 361, 364 (Mo.App.1984) (quoting *State v. Powell,* 630 S.W.2d 168, 170 (Mo.App.1982)).

Examination of Joshua's body revealed multiple injuries, internally and externally. Joshua died from a tear in the small intestine caused by a blunt impact to the abdomen. Franklin admitted to hitting Joshua in the area which resulted in Joshua's death. The jury could have inferred from the seriousness of Joshua's injuries that Franklin knew his actions were practically certain to cause Joshua serious physical injury. *State v. Taylor,* 747 S.W.2d 150, 154 (Mo.App.1988). The state presented sufficient evidence for a jury to reasonably conclude that Franklin acted with intent to cause Joshua serious physical injury.

Franklin also contends that the trial court erred in allowing the state to introduce evidence that Joshua was malnourished and that he was below normal on a growth chart. Franklin claims that this evidence allowed the jury to speculate that Franklin intentionally starved Joshua and that it was evidence of another crime for which he was not charged.

Whether evidence is relevant and whether its probative value outweighs its inflammatory and prejudicial dangers is for the trial court to decide. *State v. Gibson,* 636 S.W.2d 956, 958 (Mo. banc 1982). We will not disturb the trial court's decision unless it abuses its discretion. *Id.*

The evidence of Joshua's malnourishment was probative of Franklin's feelings for the child. It was relevant as proof of Franklin's general animosity for Joshua. The jury could infer from it that Franklin intended to cause Joshua serious physical injury. "A fact that tends to corroborate evidence relevant to a material issue is relevant evidence although it may not alone be probative of an ultimate fact." *Id.*

"[W]here different inferences may fairly and reasonably be drawn regarding the intent with which the alleged criminal act was done or where the surrounding circumstances are such as to be susceptible of an interpretation indicating innocence," evidence of other crimes is admissible for the purpose of showing that the accused acted with the requisite intent.

*State v. Rose,* 727 S.W.2d 919, 922 (Mo.App.1987) (quoting *State v. Shilkett,* 356 Mo. 1081, 204 S.W.2d 920, 923 (Mo. 1947)). Evidence of other crimes is also admissible if "it is actually relevant to prove defendant's guilt of the particular crime of which he is being tried, and not merely to show his bad character or his disposition to commit the crime[.]" *Id.* at 921. If proof of the other crime tends to show his intent in the present instance, the evidence is admissible. *Id.*

The trial court did not abuse its discretion in admitting evidence of Joshua's malnourishment. It was relevant to prove

Franklin's intent to cause serious physical injury to Joshua.

All concur.