**STATE of Missouri, Respondent,**

v.

**Tarchechee CHAMBERS, Appellant.**

**No. WD 49008.**

Missouri Court of Appeals,
Western District.

Sept. 27, 1994.

Ellen H. Flottman, Office of the State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Joanne E. Beal, Asst. Atty. Gen., Jefferson City, for respondent.

Before FENNER, C.J., P.J., and LOWENSTEIN and SPINDEN, JJ.

FENNER, Chief Judge.

Appellant, Tarchechee Chambers, appeals his convictions of kidnapping and armed criminal action after trial by jury.

Taken in the light most favorable to the verdict, the evidence reflects that on July 23, 1993, at approximately 11:30 p.m., Chambers entered a restaurant where he confronted the victim, Vicki Antonopoulos. Chambers and Antonopoulos lived together. Antonopoulos had terminated the relationship, but Chambers would not leave her alone. On July 22, 1993, Antonopoulos had obtained a full order of protection against Chambers from the Circuit Court of Saline County.

Antonopoulos was working at the restaurant when Chambers came in with a gun in his waistband. When Antonopoulos saw Chambers with the gun, she ran to the basement and tried to secure herself in a basement office. Chambers followed Antonopoulos to the basement and pulled open the door to the office where she had gone. Chambers pulled Antonopoulos out of the office, placed his arm around her neck, pointed the cocked gun at her head and said, "I ought to kill you."

Antonopoulos's daughter, Bobbie, was in the restaurant when Chambers came in with the gun. Bobbie saw Chambers chase her mother to the basement and Bobbie called the police. An officer, Sergeant Bolling, arrived and began to converse with Chambers from the top of the stairs to the basement. Chambers told Sergeant Bolling not to come into the basement. Thereafter, Chambers

continued to hold Antonopoulos in the basement for an hour and a half. Sergeant Bolling asked Chambers on several occasions to release Antonopoulos, but Chambers refused until he finally surrendered.

■ In his first point on appeal, Chambers argues that the trial court erred by admitting evidence that the gun used was taken from Danny Hamblen without Hamblen's consent. Chambers argues that this was inadmissible evidence of another crime. As part of his first point, Chambers also argues that it was error for the trial court to overrule his motion in limine to exclude evidence that the gun was stolen from Hamblen.

■ A ruling on a motion in limine is interlocutory only and is subject to change during the course of trial. *State v. Purlee,* 839 S.W.2d 584, 592 (Mo. banc 1992) (citation omitted). The motion in limine itself preserves nothing for appeal. *Id.*

In the case at bar, on direct examination of Hamblen by the State, there was evidence introduced, without objection, to show that the gun belonged to Hamblen. However, when the State tried to show that the gun was taken without Hamblen's permission, Chambers objected and the objection was overruled. The subject came up again, later in the trial when Chambers was under cross-examination by the State. Chambers, under cross-examination and without objection to the question presented ... testified that he took the gun from a drawer in Hamblen's bedroom on July 23, 1993, when he was in the Hamblen residence to use the bathroom.

Generally, a party cannot complain about the admission of testimony over his objection, where evidence of the same tenor is admitted without objection. *State v. Griffin,* 876 S.W.2d 43, 45 (Mo.App.1994). In the case at bar, there was evidence introduced on more than one occasion to show that the gun was taken from Hamblen without his permission. On at least one occasion, there was no objection to the evidence.

Therefore, the trial court did not err in admitting evidence that the gun was taken from Hamblen without his permission.

Chambers' first point is denied.

■ In his second point, Chambers argues that the trial court erred in refusing to instruct the jury on false imprisonment. Chambers argues that false imprisonment is a lesser included offense of kidnapping and that his false imprisonment instruction was supported by the evidence.

A charge of kidnapping can be premised upon a defendant unlawfully removing another without the victim's consent or unlawfully confining another without consent. § 565.-110, RSMo 1986.

In *State v. Seddens,* 624 S.W.2d 470, 473 (Mo.App.1981), this court held that false imprisonment is not a lesser included offense of kidnapping when the kidnapping charge is based upon unlawful removal as opposed to unlawful confinement. The *Seddens* court stated that when the kidnapping charge is based upon unlawful confinement, all elements of false imprisonment are included in the offense of kidnapping. *Id.* In *Seddens,* the kidnapping charge was based upon unlawful removal.

The State argues in the case at bar that the court's conclusion in *Seddens,* that false imprisonment is a lesser included offense of kidnapping when the kidnapping charge is based upon unlawful confinement, is dicta and not controlling. We do not find it necessary here to address this question because even assuming, without deciding, that false imprisonment is a lesser included offense for kidnapping, it was not error for the court to refuse appellant's false imprisonment instruction under the evidence presented.

■ A court is not required to instruct on a lesser included offense unless there is basis for an acquittal of the greater offense and a conviction of the lesser offense. *State v. Olson,* 636 S.W.2d 318, 321 (Mo. banc 1982); § 556.046.2, RSMo 1986. In order for there to be a basis for an acquittal of the greater offense, there must be some affirmative evidence that an essential element of the greater offense is lacking and the element which is lacking must be the basis for acquittal of the greater offense and conviction of the lesser. *Olson,* 636 S.W.2d at 322. In determining whether there is sufficient affirmative evidence that an essential element of the great-

er offense is lacking, a court may examine the totality of the evidence. *Id.* at 322.

■ The offense of kidnapping is defined in section 565.110, RSMo 1986, as follows:

A person commits the crime of kidnapping if he unlawfully removes another without his consent from the place where he is found or unlawfully confines another without his consent for a substantial period, for the purpose of

\*   \*   \*   \*   \*   \*

(5) Inflicting physical injury on or terrorizing the victim or another.

Terrorizing is defined as "to fill with terror or anxiety." Webster's Collegiate Dictionary 1218 (9th ed. 1986). Terror is defined as "a state of intense fear." *Id.*

The offense of false imprisonment is defined in section 565.130, RSMo 1986, as follows:

A person commits the crime of false imprisonment if he knowingly restrains another unlawfully and without consent so as to interfere substantially with his liberty.

In support of his second point, Chambers argues that the jury could have found that he did not have the purpose of terrorizing Vicki Antonopoulos since he testified that his purpose was to commit suicide in front of her.

Chambers' stated intention was to shoot himself in front of Vicki Antonopoulos, a woman with whom he had been romantically involved. This would clearly have been an act directed toward filling Vicki Antonopoulos with terror or anxiety. Chambers' argument that there was evidence to show that he did not have the purpose of terrorizing Ms. Antonopoulos is not supported by the record.

Chambers' second point is denied.

■ In his third point, Chambers argues that the trial court erred in overruling his objection and further plainly erred in failing to sua sponte declare a mistrial during the State's closing argument where the prosecutor improperly personalized to the jury and shifted the burden of proof.

The standard of review for alleged error in closing argument depends upon whether defense counsel objects. Where defense coun-sel objects, appellate courts will reverse the trial court's decision with regard to closing argument only upon a showing of abuse of discretion by the trial court. *State v. Shurn,* 866 S.W.2d 447, 460 (Mo. banc 1993) (citations omitted). However, where defense counsel does not object, appellate courts may review only for plain error. *Id.*; Rule 30.20. Plain error review mandates reversal only if the error results in manifest injustice. *Shurn,* 866 S.W.2d at 460. Plain error review also requires that the argument have a decisive effect on the jury's determination. *Id.* Furthermore, "[r]elief should rarely be granted on assertion of plain error as to closing argument because 'in the absence of an objection and a request for relief, the trial court's options are narrowed to uninvited interference with summation and a corresponding increase of error by such intervention.'" *State v. Harper,* 855 S.W.2d 474, 479 (Mo.App.1993) (quoting *State v. Clemmons,* 753 S.W.2d 901, 907–08 (Mo. banc), *cert. denied,* 488 U.S. 948, 109 S.Ct. 380, 102 L.Ed.2d 369 (1988)).

During his closing argument, the prosecutor argued as follows:

In 1986, if a person walked on the streets of this community outside this courthouse on the square and went to somebody who had lived here and said, when was the last murder in your town or in your county, the response may have been, well, it was a girl stabbed to death at the park, or the elderly gentleman who was killed over in the hotel, or could be the wild life area with four homicides, or two down here on the corner on Christmas Eve. If you go out on the streets or if a person goes out on the streets of a community today and walks around the square and asks every single person you see, when was the last murder committed in your community—

At this point, counsel for Chambers objected to improper personalizing. The objection was overruled and no further objections were made during closing argument. Nonetheless, on appeal, Chambers further complains that the prosecutor improperly personalized by arguing to the jury as follows:

[T]here are other reasons as well that contribute to the lack of homicides in this community. One of these reasons is ... the officers out on the street every day, trying to keep these things from happening. We would like to thank them. Mr. Harvey and I like to think one of the reasons is that there is some pretty strict law enforcement in this community and in the prosecutor's office.

\* \* \* \* \* \*

Now, the law enforcement officers do everything they can do, and we bring the case before juries. But the bottom line, the line drawn in the sand, is one drawn by you and other people like you ...

It is improper for the prosecutor to personalize by attempting to engender fear of personal safety in the minds of the jury. *State v. Raspberry*, 452 S.W.2d 169, 172 (Mo. 1970). However, a prosecutor is at liberty to comment on the "prevalence of crime in the community, the necessity of law enforcement to deter crime, and the evils that may befall society if a jury fails its duty." *State v. Beal*, 840 S.W.2d 881, 882 (Mo.App.1992).

The prosecutor did not improperly personalize to the jury. The prosecutor's comments were permissible comments on the need for law enforcement and the harm to society if juries fail to perform their duty. The prosecutor did not impermissibly suggest personal danger to the jurors.

 Chambers argues further under his third point that the prosecutor shifted the burden of proof requiring Chambers to establish his innocence by arguing as follows:

Now, there are some questions that I think Mr. Bartee [defense counsel] owed you some answers to. I think Mr. Bartee needs to tell you why this defendant fired that gun. What is the explanation for that? Why did he first deny the gun was loaded? Why did he admit that he went down to scare Vicki [the victim], and then back up on that? Did you notice on the stand—and I don't know, maybe it would have taken another hour—I said, "did Tom Bolling ask you to let her go? And what was your response?" "Well, I don't remember that. No, sir, he didn't ask me." But, finally, "yeah, he asked me. He asked me." "And what was your response?" And the final response was, "I said no." How about that? And I guess the most important question is, if this defendant didn't intend to kill this woman, why did he put a cocked gun to her head? Why did he keep her for an hour and 24 minutes? And why is it that we in this county should reward this behavior with a not guilty verdict?

In the case at bar, Chambers testified in his own defense. Once a defendant has testified, comments during closing argument regarding the lack of evidence to support the defendant's position are not improper. *State v. Taylor*, 831 S.W.2d 266, 269–70 (Mo.App. 1992). Furthermore, the prosecutor's comments were directed at credibility.

There was no error, plain or otherwise, by the trial court's failing to declare a mistrial sua sponte during closing argument.

Judgment affirmed.

All concur.