STATE of Missouri, Respondent,

v.

David H. MYSZKA, Appellant.

No. WD 53120.

Missouri Court of Appeals,
Western District.

Feb. 17, 1998.

Jianbin Wei, Springfield, for appellant.

Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before LAURA DENVIR STITH, P.J., and HANNA and RIEDERER, JJ.

RIEDERER, Judge.

Appellant David Myszka, after a jury trial in the circuit court of Platte County, appeals his conviction for murder in the second degree, § 565.021.1 RSMo,[1] and armed criminal action, § 571.015.1. We affirm.

### Facts

In the early morning hours of April 28, 1995, Janice Rodriguez,("deceased") while at her residence at 615 Thomas Street, Weston, Platte County, Missouri, died as a result of a gunshot wound to her chest. The deceased lived at 615 Thomas Street with her fourteen year-old son, Jarrod Dustin Rodriguez ("J.D.") and Appellant, the deceased's boyfriend.

J.D. testified that on the evening of April 27, 1995, he had dinner with the deceased at Applebee's, went to Best Buy, and then came back home and watched movies with her until approximately midnight. Around midnight the deceased went into her bedroom to go to sleep. J.D. rewound the movies, and then got his headphones from his bedroom so he could listen to music on the couch, where he planned to sleep that night. J.D. had been listening to loud rap music on his headphones for approximately 15 minutes. When he took them off he heard something that sounded like a person vomiting. He got up to go check out the noise. He proceeded halfway through the kitchen and heard Appellant say, "your son's comin." J.D. then turned around and ran to his room, where he acted asleep, for fear he might get into trouble. He then heard someone walking through the dining room and the sound of deceased's keys rattling. He knew they were the deceased's keys because she had a large number of keys due to her position at Wadsworth Credit Union. J.D. then saw Appellant on the phone. J.D. noticed that Appellant had blood in his ear. After J.D. asked twice to see his mother, Appellant finally let J.D. see

her. She was dead. Appellant told J.D. that his mother had committed suicide.

Between midnight and 1:00 a.m. on April 28, 1995, Officer Terry L. Blanton ("Blanton") of the Weston Police Department, received a call regarding a reported suicide at 615 Thomas Street. The caller was J.D., who told Blanton that he believed his mother had committed suicide. Blanton then proceeded to 615 Thomas Street, where he found the deceased lying on the floor of her bedroom. A handgun, a .32 Derringer pistol, was removed from her left hand. The deceased was right-handed. J.D. and Appellant were both present at the scene. Blanton thought that Appellant was intoxicated due to the strong odor of alcohol on his breath and his blurry red eyes. Blanton asked to perform a breathalyzer test, which defendant refused.

The death was not thought to be a homicide until later that same morning, when the medical examiner's office contacted Chief Larry Winfrey ("Winfrey") of the Weston Police Department. They indicated to him that the victim died due to a gunshot wound to the chest which appeared to be suspicious. Winfrey called William Taylor ("Taylor"), Captain of the Platte County Sheriff's office investigation unit and asked for his assistance in the investigation. Taylor sent a couple of officers to the medical examiner's office, and he sent Deputy Randy Pittman to secure the scene at 615 Thomas Street.

In the meantime, Appellant had already told several individuals that the deceased had "offed herself," and "blew her shit away." At approximately 9:30 a.m. on April 28, 1995, the Appellant arrived at Wadsworth Credit Union in the deceased's van. He went there to give back the deceased's keys to the building. According to employees at the credit union, Appellant appeared drunk, had a scratch on his face, and blood in his ear. Lloyd Nuggent, a colleague of the deceased, decided to drive Appellant back to Weston because of his apparent intoxication. Another colleague, Rich Kowalczk, rode along. Around noon they arrived at 615 Thomas Street. Police were at the scene.

---

1. All statutory references are to RSMo 1994, unless otherwise indicated.

Appellant attempted to go into the house, but was refused entry. Soon after, Appellant was placed under arrest. While Taylor was bringing Appellant's hands behind his back, Deputy Pittman noticed that Appellant had a .45 caliber automatic handgun under his shirt. The handgun contained seven rounds. Six rounds of .32 caliber ammunition were found in his pocket. A box of .45 ammunition and a receipt for it, dated the same day, were found in the deceased's van that Appellant had been driving.

After his arrest, Appellant was interrogated late in the evening on April 28, 1995. According to the transcript which had been made of the interrogation, Appellant claimed to have gone to bed with the deceased. After being in bed for approximately fifteen minutes, the deceased got out of the bed. Appellant said, "The next thing boom, and she hits the floor. So I jumped up and turned on the lamp to see what happened. She was laying there bleeding all over. I didn't think that there was actually any hope for her. She was bleeding that bad."

At the trial, the State's firearm expert, Ralph Baney testified that he found no gunpowder residue on the shirt which the deceased wore at the time of her death. The expert further testified that he test-fired the gun and found that at 20 inches gunpowder residue would be present on the garment. This meant that the gun had to be fired at a distance greater than 20 inches from the wound. Based on this information, the expert concluded that this gunshot would have been inconsistent with the deceased shooting herself.

Dr. Thomas Young, Medical Examiner for Jackson, Platte and Clay counties testified that in his opinion, it would be impossible for the gunshot wound on the deceased to have been self-inflicted, given the autopsy report on the deceased and the ballistics report. Dr. Bonita Peterson, who performed the autopsy, testified that, "with the left hand," a suicide "would be difficult and awkward" or "may not even be possible."

Other testimony revealed that Appellant had a drinking problem and that the deceased had told him if he did not quit drinking she would kick him out. In addition,

Larry Eubank testified that several months prior to the shooting, he had given Appellant the .32 caliber Derringer in partial payment for painting Eubank's car. When Eubank gave Appellant the gun Myszka said, "You could make it look like somebody committed suicide with a gun." Appellant then told Eubank that he had a friend who killed his wife and made it look like a suicide.

### Procedural Background

On June 19, 1996, the Appellant, David H. Myszka, was found guilty of murder in the second degree, and armed criminal action, following a jury trial in the circuit court of Platte County, Missouri. On July 25, 1996, defendant was sentenced to consecutive terms of life imprisonment and 50–years' imprisonment. This appeal ensued.

### I. Sufficiency of the Evidence

Appellant's first point on appeal is that the trial court erred in overruling his motion for judgment of acquittal because the State failed to present substantial evidence to prove his guilt beyond a reasonable doubt.

### A. Standard of Review

When reviewing the sufficiency of the evidence, all the evidence and its inferences are considered in a light most favorable to the verdict. *State v. Franklin,* 854 S.W.2d 55, 57 (Mo.App.1993) (citing, *State v. Sladek,* 835 S.W.2d 308, 310 (Mo. banc 1992)). We reject all contrary evidence and inferences. *Id.* This court neither weighs the evidence nor determines its reliability or the credibility of witnesses. *Id.* Our review is confined to a determination of whether the jury had substantial evidence from which to find the defendant guilty beyond a reasonable doubt. *Id.* at 57–58. "Substantial evidence is evidence from which the trier of fact reasonably can find the issue in harmony with the evidence." *Id.*

### B. Discussion

Appellant claims the State's evidence failed to prove the *corpus delicti,* or the body of the crime. Specifically, Appellant claims the State's circumstantial evi-

dence failed to prove defendant's criminal agency, that Appellant "knowingly or with the purpose of causing serious injury" killed the deceased, and that the state failed to prove beyond a reasonable doubt that the death was not the result of an accident. Murder requires the proof of two elements: (1) the victim's death, and (2) the criminal agency of another as the cause of the victim's death. *State v. Davis*, 797 S.W.2d 560, 563 (Mo.App.1990). The state must prove that the death was neither self-inflicted nor the result of natural causes or accident. *State v. May*, 689 S.W.2d 732, 735 (Mo.App.1985).

■ A person commits the crime of murder in the second degree if he: knowingly causes the death of another person or, with the purpose of causing serious physical injury to another person, causes the death of another person. § 565.021.1(1). "Even where evidence of a defendant's guilt is solely circumstantial, the evidence is sufficient to support a conviction if the evidence is such that a reasonable juror would be convinced beyond a reasonable doubt of the defendant's guilt." *State v. Bragg*, 867 S.W.2d 284, 290 (Mo.App.1993) (citing, *State v. Grim*, 854 S.W.2d 403, 406 (Mo. banc 1993)). "All of the elements of a homicide case, including the corpus delicti may be proved with circumstantial evidence." *State v. Baker*, 859 S.W.2d 805, 813 (Mo.App.1993) (citing, *State v. Vincent*, 785 S.W.2d 805, 810 (Mo.App. 1990)).

Viewed in the light most favorable to the verdict, the evidence at trial established that the deceased was fatally shot in the chest with Appellant's .32 Derringer pistol in the bedroom of the home they shared, and that the victim and the Appellant were the only two persons in the room when the fatal shot was fired.

■ Although the Appellant insisted that the deceased had committed suicide, the State's ballistic and medical evidence ruled out that possibility. Certainly, there was substantial evidence from which the jury could reasonably find the issue as they did. *Franklin*, 854 S.W.2d 55 at 57–58. The State's firearm expert, Ralph Baney testified that since he found no gunpowder residue on the shirt the deceased was wearing at the

time of her death, the gun had to of been fired at a distance greater than 20 inches from the wound. Dr. Bonita Peterson, who performed the autopsy, testified that the path of the bullet was at a very slight upward angle and at about a 20 degree angle to the left. She testified that it may not have been physically possible for the deceased to shoot herself with her left hand. Dr. Peterson also testified that their was no sooting or tattooing in the deceased's gunshot wound, which is evidence that the gun was not close to and not in contact with the skin. Further, Dr. Thomas Young, Medical Examiner for Jackson, Platte and Clay counties testified that it would be impossible for the gunshot wound on the deceased to have been self-inflicted, because the ballistics report concluded that the gun had to of been fired more than 20 inches away and because of the wound track, angle and characteristics reported by Dr. Peterson.

■ The State's ballistic evidence and medical evidence thus provided substantial evidence from which the jury could reasonably have concluded beyond a reasonable doubt, under the standard of review, that the victim's death was not suicide. The next question is whether there was sufficient evidence for the jury to conclude that the death of the victim was not the result of an accident.

The State's evidence showed that the deceased had told the Appellant that he had to quit drinking or she would make him move out of the residence they shared. Appellant called his ex-wife, Barbara Ott several times on April 26, divulging his fear of getting kicked out of the house by the deceased. Appellant indicated he was having problems and told Ms. Ott, "I'm fucked." Larry Eubanks, testified that Appellant's drinking had gotten progressively worse over a short period of time, and that he was aware of Appellant's anxiety over the possibility of getting kicked out of his home due to his drinking. This was all evidence of a motive for inflicting death or serious physical injury.

■ Regarding the events of the night of the homicide, Appellant's story to the police was as follows. Appellant had gone to

bed with the deceased, and after being in bed for approximately fifteen minutes, the deceased got out of the bed and, "the next thing boom, and she hits the floor. So I jumped up and turned on the lamp to see what happened. She was laying there bleeding all over." The deceased was found with a gun in her left hand, although there was evidence that she is right-handed. Guilt may be inferred when an accused attempts to deceive the police. *State v. Plant,* 694 S.W.2d 751, 755 (Mo.App.1985) (citing, *State v. Riley,* 536 S.W.2d 501, 504 (Mo.App.1976)). The Appellant also told several individuals including police that the deceased had committed suicide. "When proven false, exculpatory statements evidence a consciousness of guilt." *State v. Williamson,* 809 S.W.2d 16, 19 (Mo.App.1991) (citing, *State v. Rodden,* 728 S.W.2d 212, 213 (Mo. banc 1987)). The jury decides the reliability and credibility of a witness. *State v. Sumowski,* 794 S.W.2d 643, 645 (Mo. banc 1990). The jury is free to believe all, some, or none of the witness' testimony in arriving at their verdict. *State v. Dulany,* 781 S.W.2d 52, 55 (Mo. banc 1989) (citing, *State v. Porter,* 640 S.W.2d 125, 127 (Mo.1982)).

This is substantial evidence from which a jury could find that the death of the victim was not the result of an accident. Under the evidence at trial, a reasonable juror could find beyond a reasonable doubt that the Appellant was guilty of second degree murder. The State provided ample evidence to prove the *corpus delicti.* The evidence showed the gunshot was not self-inflicted, and certainly not a natural event. Nor was any evidence offered to show that the gunshot was the result of an accident. This leaves one possibility: Appellant shot the victim. Point I is denied.

## II. Use of the Transcript of the Interrogation of Defendant

Appellant contends in his second point on appeal that the trial court erred in allowing the State's witness to read from a transcript made from the interrogation of Appellant. Specifically, Appellant claims this was error because the transcript was not offered into evidence; that use of the transcript violated the best evidence rule, as well as the rule against hearsay; and that there was no showing that it was an accurate account of what Appellant said in the interrogation.

 Appellant objected to the State's use of the transcript for the first time in his motion for new trial. Claims are not preserved for review when no objection is made at trial; '[c]laims of inadequate foundation will not be considered for the first time on appeal.'" *State v. Candela,* 929 S.W.2d 852, 863 (Mo.App.1996) (quoting, *State v. Blue,* 875 S.W.2d 632, 633 (Mo.App.1994)). Appellant never asserted until this appeal that the State's use of the transcript violated the hearsay rule or the best evidence rule or that there was no showing that the transcript was an accurate account of what Appellant said in the interrogation. "Failure to timely object to the admissibility of evidence waives any right to challenge the admissibility of the evidence on appeal." *State v. Weston,* 926 S.W.2d 920, 922 (Mo.App.1996). The grounds advanced on appeal are limited to those stated at trial. *State v. Phillips,* 939 S.W.2d 502, 505 (Mo.App.1997).

### A. Standard of Review

 Because the Appellant failed to raise these issues at trial, discretion rests with the reviewing court to review the alleged error as "plain error" under Supreme Court Rule 30.20. "In jury-tried cases, an allegation of error not included in a motion for new trial is not preserved for appeal and is reviewable only for plain error resulting in manifest injustice or miscarriage of justice." *Candela,* 929 S.W.2d 852, 860. "The plain error rule should be used sparingly and does not justify a review of every trial error that has not been properly preserved for appellate review." *Phillips,* 939 S.W.2d 502 at 505–06. Plain error review exacts a greater burden on appellant than exists when appellant preserved the issue. *Id.* "Appellant must demonstrate that the error asserted so substantially affected the rights of the accused that manifest injustice or miscarriage of justice inexorably results if left uncorrected." *Id.*

## B. Discussion

In this case, it is instructive to explain how this issue developed. On April 28, 1995, Detective Tommy J. Taulbee ("Taulbee"), along with another officer, questioned the Appellant following his arrest. The interrogation was audio taped and videotaped. A written transcript was also made. When the State attempted to have Taulbee identify a copy of the videotape, the Appellant asked to approach the bench; he claimed that the State had failed to inform him that a videotape had been made of the interview. Appellant acknowledged that he had received a written transcript of the interview, but argued that he was never expressly told by the State that a videotape had been made. The State argued that the videotape was presented to Appellant when he was at their office inquiring about the audio tapes, and that they did not have a duty to affirmatively identify which tapes were audio and which were video. Further, Appellant looked at the audio tapes and said that if the written transcript was complete, he did not need the audio tapes. Appellant's request for a mistrial on this issue was denied, and the court informed the attorneys that Taulbee's testimony would be postponed to give Appellant a chance to view the videotape. When Taulbee was recalled to testify, the court determined that he could testify regarding his interview with the Appellant, as long as the State did not intend to introduce the videotape. The State then began directing Taulbee's attention to questions he had asked Appellant at the interrogation. Taulbee, relying on the transcript, would give the Appellant's response. This continued for some time. When Appellant objected for the first time, it was to due to inaudible statements not included in the transcript. Appellant then objected to Taulbee misquoting Appellant. Taulbee quoted Appellant as stating, "I don't think," instead of "I didn't think." Appellant then insisted that, "I would prefer if we're going to do it verbatim that it be read exactly as it's put down in this transcript." Appellant also objected when the State attempted to ask Taulbee what the Appellant said concerning a specific topic. Appellant said: "Your Honor, if she's going to be testifying as to what this transcript says, I would ask that she just read the portions or he read the portions of the transcript rather than her testifying." Further, during cross-examination of Taulbee, Appellant had him read from the transcript, using the same procedure the State had used. Appellant renewed his objection to the videotape when the State indicated it was prepared to offer the videotape into evidence. It was then agreed that the prosecution would no longer try to offer the videotape into evidence. No objection was asserted as to the use of the transcript until Appellant's motion for a new trial. Appellant's attorney cannot participate in the use of the transcript, insist on an accurate reading of the transcript and then turn around and claim use of the transcript was plain error. No error resulted from the reading of the transcript that substantially affected Appellant's rights. Use of the transcript did not amount to manifest injustice. Point II is denied.

## III. Testimony Regarding Admissions of Appellant

The Appellant asserts in his third point on appeal that the trial court erred in admitting the testimony of the State's witness Larry Eubank when he said, "[h]e (Appellant) said you could make it look like someone committed suicide that way," and that he (Appellant) had a friend who killed his wife and made it look like a suicide. Appellant argues that although he did not object to these statements at trial, the court should review his point as plain error because manifest injustice and miscarriage of justice has occurred.

### A. Standard of Review

It is within the sound discretion of the trial court to decide whether evidence is relevant and whether its probative value outweighs its inflammatory and prejudicial dangers. *State v. Franklin*, 854 S.W.2d 55, 58 (Mo.App.1993) (citing, *State v. Gibson*, 636 S.W.2d 956, 958 (Mo. banc 1982)). "The trial court has broad discretion in determining the relevancy of evidence and such ruling will not be disturbed absent a clear showing of abuse." *State v. Sexton*, 929 S.W.2d 909, 915 (Mo.App.1996) (citing, *State v. Jacobs*, 861 S.W.2d 621, 624 (Mo.App.1993)). Evidence is

relevant if it tends to prove or disprove a fact in issue, or corroborates other relevant evidence bearing on the main issue. *State v. Suter*, 931 S.W.2d 856, 865 (Mo.App.1996) (citing, *State v. Matheny*, 860 S.W.2d 837, 838 (Mo.App.1993)).

## B. Discussion

Larry Eubank testified at trial that when he gave Appellant the .32–caliber Derringer that was later used to kill the victim, Appellant said, "you could make it look like somebody committed suicide with a gun," and that a friend of his had made it look life his wife had committed suicide. Mr. Eubank then stated at trial, "I feel partially responsible for this. I gave him the gun. And it's really hard for me to think about this."

The only time Appellant ever raised the issue of the prejudicial nature of Mr. Eubank's testimony was during a pretrial motion in limine discussed *infra*. Appellant contended that Mr. Eubank's testimony would be "inflammatory information" and that it had no probative value. The motion in limine concerning Mr. Eubank's testimony was denied, and Appellant never raised the issue again. It was within the trial court's discretion to determine whether Mr. Eubank's testimony was relevant. The trial court's decision to allow the testimony indicates that it considered the evidence to be relevant. We agree. Mr. Eubank's testimony revealed that the deceased died in the exact same way Appellant described to Mr. Eubank when Appellant received the gun from him just over a year earlier. Further, that same gun was used to murder the deceased. The trial court did not abuse its discretion in allowing the testimony of Mr. Eubank.

Prior to the testimony of Mr. Eubank, Appellant said to the judge, "Your Honor, I previously objected in a motion in limine concerning this testimony by Mr. Eubank of this gun of January, 19, 1994. I can renew my motion for his testimony to be prohibited, at this time." The court overruled this objection, and the judge allowed the testimony. Appellant's attorney never objected to Mr. Eubank's testimony at trial.

The duty to make a timely objection at trial is not relieved by a defendant's use of a pre-trial motion in limine. *State v. Radley*, 904 S.W.2d 520, 524 (Mo.App.1995) (citing, *State v. Stimmel*, 800 S.W.2d 156, 158 (Mo.App.1990)). "The trial court's ruling on [a] motion in limine is interlocutory and only an objection made at trial when evidence is offered will preserve the issue of the evidence for appellate review." *State v. Townsend*, 898 S.W.2d 118, 119 ( Mo.App.1995) (citations omitted). A motion in limine by itself preserves nothing for appeal. *State v. Chambers*, 884 S.W.2d 113, 115 (Mo.App. 1994). Appellant did not object at trial when the statements were entered into evidence nor was the issue raised in the motion for a new trial. Appellant has failed to preserve this error for appeal.

Appellant also argues that the testimony in question is too remote in time. "The remoteness of evidence goes to its weight and not to its admissibility and whether evidence should be excluded is largely within the trial court's discretion." *State v. Williams*, 922 S.W.2d 845, 853 (Mo. App.1996) (citing, *State v. Coleman*, 857 S.W.2d 363, 366[6–8] (Mo.App.1993)). The statements at issue were made by Appellant to Mr. Eubank in January of 1994. The death of the victim occurred in April of 1995, approximately a year and three months later. The time between the death of the victim and the statements made by Appellant is a relatively long period of time. However, the nature of the statements made by Appellant give the evidence great weight because of the similarity between Appellant's statements to Mr. Eubank and the way in which the deceased was killed. It was within the trial court's discretion to allow the testimony although Appellant's statements were remote in time.

Appellant also argues in his brief that the prejudicial effect of Mr. Eubank's testimony far outweighed any probative value and that the testimony could only have inflamed and aroused emotions of the jury, prejudicing them against Appellant. Appellant asks this court to review the trial court's allowance of Mr. Eubank's testimony for plain error. Appellant's argument and lack

of cited authority provide no justification for this court to review this point under plain error. "Errors raised for the first time on appeal are reviewed under the plain error standard." *State v. Ross*, 923 S.W.2d 354, 356 (Mo.App.1996). "[U]nless a claim of plain error facially establishes substantial grounds for believing that 'manifest injustice or miscarriage of justice has resulted,' this court will decline to exercise its discretion to review for plain error under Rule 30.20." *State v. Brown*, 902 S.W.2d 278, 284 (Mo. banc 1995). Appellant's third point cites the United States Constitution and the Missouri Constitution. However, Appellant cites no authority in the argument portion of their brief. Thus, there is no facial demonstration of manifest injustice or miscarriage of justice. "Under Rule 84.04(d) an appellant's obligation includes citing appropriate and available precedent to support its conten-

tion." *Carlund Corp. v. Crown Center Redevelopment Corp.*, 910 S.W.2d 273, 278 (Mo. App.1995) (citing, *Thummel v. King*, 570 S.W.2d 679, 687 (Mo. banc 1978); *Shiyr v. Pinckney*, 896 S.W.2d 69 (Mo.App.1995)). Further, the reviewing court may consider a point abandoned if no authority is given or if no explanation is given as to why authority is not available. *Id.* We consider this point abandoned.

Affirmed.

All concur.