David H. MYSZKA, Appellant,

v.

STATE of Missouri, Respondent.

No. WD 56589.

Missouri Court of Appeals,
Western District.

Feb. 22, 2000.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 28, 2000.

Application for Transfer Denied
May 30, 2000.

Andrew A. Schroeder, Asst. Public Defender, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Kristin M. Frazier, Asst. Atty. Gen., Jefferson City, for respondent.

Before Presiding Judge LAURA DENVIR STITH, Judge VICTOR C. HOWARD and Judge WILLIAM E. TURNAGE.

LAURA DENVIR STITH, Presiding Judge.

David H. Myszka was convicted of second degree murder and armed criminal action, and those convictions were affirmed on direct appeal in *State v. Myszka*, 963 S.W.2d 19 (Mo.App. W.D.1998). Mr. Myszka then filed a motion under Rule 29.15 for post-conviction relief, in which he alleged that his trial counsel was ineffective for failing to file a motion requesting a speedy trial and for failing to object to allegedly improper opinion testimony. He also alleged that his appellate counsel was ineffective for failing to raise on direct appeal the trial court's allegedly erroneous admission of hearsay testimony. Because we find no error in any of the respects alleged, we affirm denial of Mr. Myszka's motion for post-conviction relief.

## I. STATEMENT OF FACTS

Mr. Myszka was sentenced by Judge Ward B. Stuckey to consecutive terms of life imprisonment on his conviction of second degree murder, and 50 years on his conviction of armed criminal action. The facts giving rise to his convictions, considered in the light most favorable to the verdict, are as follows:

On the evening of April 28, 1995, Janice Rodriguez ("decedent") and her 14-year old son, J.D. were out shopping. After returning home, they watched movies until midnight. At that time, Ms. Rodriguez went to her bedroom and her son rested on the couch, where he intended to sleep, listening to music through his headphones. Movant, decedent's boyfriend, was already in Ms. Rodriguez's bedroom.

J.D. had been listening to music for approximately 15 minutes when he heard a noise that sounded like a person vomiting. When he went to check out the noise, he heard Movant warn the decedent that J.D. was approaching. Fearing that he would get into trouble, J.D. returned to his own bedroom. He then heard someone walking through the dining room and the rattling of what sounded like his mother's key

ring. When J.D. looked out of the room he saw Mr. Myszka on the telephone with blood in his ear. J.D. twice demanded that Movant let him see his mother. When Movant did, J.D. saw that she was dead. Mr. Myszka claimed that she committed suicide.

J.D. called the Weston Police Department, spoke with Officer Terry Blanton, and informed him that his mother had committed suicide. When Officer Blanton arrived at the scene, he found the decedent lying on the floor in her bedroom with a .32 Derringer pistol in her left hand. The officer also noticed that Movant's breath had a strong odor of alcohol and his eyes were red and blurry. Movant was asked to perform a breathalyzer test, but refused.

The death of Ms. Rodriguez was not immediately thought to be a homicide. Later this same morning, however, the medical examiner's office reported to Chief Larry Winfrey of the Weston Police Department that the gunshot wound to the chest that caused Ms. Rodriguez's death was suspicious. At about the same time, Movant drove to the decedent's place of employment, Wadsworth Credit Union, to return her keys to the building. Other employees at the Union noticed that Mr. Myszka appeared drunk, had a scratch on his face, and had blood in his ear. Because of his apparent intoxication, Lloyd Nuggent and Rich Kowalczk, former colleagues of decedent, drove him back to Weston. When they arrived at Movant's home, police were at the scene and placed Movant under arrest. One of the arresting officers found a loaded .45 caliber handgun under Movant's shirt. He was also found with 6 rounds of .32 caliber ammunition in his pocket. A box of .45 caliber ammunition with a sales receipt dated April 28, 1995, was found in the van Movant drove.

When he was questioned later that day, Movant stated that 15 minutes after he and the decedent had gone to bed, she got out of bed, and suddenly hit the floor.

When he turned on the light, he saw his girlfriend bleeding badly, and thought she would surely die. As he had said to others earlier that same day, Movant told the police that the decedent had committed suicide.

On April 29, 1995, the day following the arrest, Movant was charged by complaint with unlawful use of a weapon. That charge was dismissed, and, on June 21, 1995, Movant was charged by complaint with one count each of second degree murder, armed criminal action, and unlawful use of a weapon. These charges, too, were dismissed, but were reinstated by indictment on September 13, 1995.

Trial counsel, Gary Allen, was appointed to represent Movant and first met with him in December, 1995. Between the time of their first meeting and the trial, Mr. Allen requested two continuances. The case was tried on June 17, 1996. At trial, the State's firearm expert, Ralph Barney, testified that he test-fired the gun which killed Ms. Rodriquez and learned that if fired from a distance of 20 inches, the gun would leave gun powder residue on the shirt of the person at whom it was fired. Because he found no such residue, he concluded the gun must have been fired from a distance greater than 20 inches. Based on these tests, he was of the opinion that the gunshot wound in this case was inconsistent with suicide. Additionally, Dr. Thomas Young, medical examiner for Jackson, Platte, and Clay counties, stated that he believed that in light of the autopsy and ballistics reports, it would be nearly impossible for the decedent to have shot herself. Finally, the doctor who performed the autopsy, Dr. Bonita Peterson, testified that, considering that the decedent was right handed, it is unlikely she committed suicide by shooting herself with a gun in her left hand.

Other testimony revealed that, because of Movant's drinking problem, the decedent had threatened to kick him out of her home. Additionally, Larry Eubank testified that several months prior to the shooting, as partial payment for painting his car, Mr. Eubank had given Movant the .32 Derringer. Finally, Mr. Eubank stated that, when Movant took the gun he said, "You could make it look like somebody committed suicide with a gun," and told Mr. Eubank of a friend who killed his wife and made it look like a suicide.

Movant was convicted by the jury on the charges of second degree murder and armed criminal action, and that conviction was affirmed. *State v. Myszka*, 963 S.W.2d 19 (Mo.App. W.D.1998). He timely filed a *pro se* and an amended motion for post-conviction relief under Rule 29.15. The amended motion alleged that Movant's trial counsel was ineffective for failing, upon Movant's request, to assert his statutory and constitutional rights to a speedy trial, and that this failure caused Movant to be confined during most of the approximately thirteen and one-half months between the murder and his trial, which in turn caused him to become so anxious that he was unable to testify in his own defense. Post-conviction counsel also alleged that trial counsel was ineffective for failing to object to the testimony of Larry Eubank that "I feel partially responsible for this. I gave him the gun. And it's really hard for me to think about this." Movant alleged these statements were improper opinion testimony. Finally, post-conviction counsel alleged that Movant's appellate counsel was ineffective for failing to claim on direct appeal that the trial court erred in allowing, over Movant's objection, the inadmissible hearsay testimony of the decedent's son: 1) that his mother threatened to kick Movant out of the house if he did not stop drinking, and 2) that his mother complained about Movant's drinking when he was not around.

On September 30, 1998 the motion court held an evidentiary hearing on the post-conviction motion. During that hearing, Movant was the sole witness. On October 13, 1998, the court denied Movant's motion for post-conviction relief. This appeal follows.

## II. STANDARD OF REVIEW

██ We will affirm the motion court's denial of a claim of ineffective assistance of counsel under Rule 29.15 unless its findings of fact or conclusions of law are clearly erroneous. *Sanders v. State*, 738 S.W.2d 856, 857 (Mo. banc 1987); *State v. Lay*, 896 S.W.2d 693, 701 (Mo.App. W.D. 1995); *State v. Landers*, 969 S.W.2d 808, 812 (Mo.App. W.D.1998); *Meade v. State*, 779 S.W.2d 659, 660 (Mo.App. E.D.1989). A judgment is clearly erroneous when, in light of the entire record, "the reviewing court is left with the definite and firm impression that a mistake has been made." *Landers*, 969 S.W.2d at 812. The findings of the motion court are presumed correct. *Id.*; *Wilson v. State*, 813 S.W.2d 833, 835 (Mo. banc 1991).

██ The movant, by a preponderance of the evidence, bears the burden of proof to establish ineffective assistance of counsel. Rule 29.15(i); *State v. Nunley*, 923 S.W.2d 911, 922 (Mo. banc 1996); *Landers*, 969 S.W.2d at 812. *See also Armstrong v. State*, 983 S.W.2d 643, 647 (Mo.App. S.D. 1999); *State v. Selvy*, 921 S.W.2d 114, 118 (Mo.App. S.D.1996). To meet this burden, Movant must satisfy a two-pronged test. First, Movant must show that his or her lawyer failed to exercise the customary skill and diligence that a reasonably competent lawyer would have exercised under similar circumstances. Second, Movant must show that he or she was prejudiced by counsel's failures. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Sanders*, 738 S.W.2d at 857.

 With respect to the first prong, there is a strong presumption that counsel was competent. *Landers*, 969 S.W.2d at 812; *State v. Suter*, 931 S.W.2d 856, 866 (Mo.App. W.D.1996). With respect to the second prong, Movant must show that, but for counsel's incompetence, the outcome would have been different. *State v. Brown*, 902 S.W.2d 278, 295 (Mo. banc 1995); *State v. Ashley*, 940 S.W.2d 927, 933 (Mo.App. W.D.1997).

██ Where, as here, a claim is made that appellate counsel was ineffective, in order to prevail on that aspect of the appeal, "strong grounds must exist showing that counsel failed to assert a claim of error which would have required reversal had it been asserted and which was so obvious from the record that a competent and effective lawyer would have recognized it and asserted it." *State v. Graham*, 969 S.W.2d 759 (Mo.App. W.D.1998), *quoting, Reuscher v. State*, 887 S.W.2d 588, 591 (Mo. banc 1994).

## III. NEITHER MOVANT'S TRIAL COUNSEL NOR HIS APPELLATE COUNSEL WERE INEFFECTIVE

### A. Failure to File a Motion for a Speedy Trial.

Movant claims trial counsel was ineffective in failing to file a motion for speedy trial when requested to do so by Movant, and that this resulted in prejudice to him because, had the request been made, the trial would have occurred earlier and he would have chosen to testify. Because of the delay, he claims, he became so nervous that he chose not to testify, and this hurt his defense.

██ As Movant acknowledges, in order to determine whether a defendant has been deprived of a right to speedy trial, a court will consider four factors: "the length of the delay, the reason for the delay, the defendant's assertion of his right to a speedy trial, and the prejudice to the defendant." *State v. Bolin*, 643 S.W.2d 806, 813 (Mo. banc 1983), *citing, Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972). The length of the delay is usually measured from the time a defendant is arrested. *Id.*; *State v. Joos*, 966 S.W.2d 349, 353 (Mo.App. S.D.1998). And, as noted in *Bolin*, " '[t]he length of the delay is to some extent a triggering mechanism' and that '[u]ntil there is some delay which is pre-

sumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance.'" *Bolin*, 643 S.W.2d at 813, *quoting*, *Barker*, 407 U.S. at 534, 92 S.Ct. 2182.

■ Missouri courts have held that a delay of 8 months or more is presumptively prejudicial. *State v. Joos*, 966 S.W.2d at 352; *Dillard v. State*, 931 S.W.2d 157, 162 (Mo.App. W.D.1996); *State v. Farris*, 877 S.W.2d 657, 660 (Mo.App. S.D.1994). Here, Mr. Myszka was arrested and charged with unlawful use of a weapon in April 1995, and was first charged with the murder on June 21, 1995. He was tried on June 17, 1996. This delay from charge to trial was more than 8 months. Therefore, we must proceed to determine whether the other three factors would have weighed in favor of finding a speedy trial violation.

■ The third factor is whether Defendant asserted his right to speedy trial. Section 545.780 makes assertion of that right a prerequisite to a claim of violation of defendant's speedy trial right. Sec. 545.780 RSMo 1994. *See also State v. Perry*, 954 S.W.2d 554, 565 (Mo.App. S.D. 1997); *Farris*, 877 S.W.2d at 660. Here, of course, all agree that his counsel failed to ever request a speedy trial. However, his argument that this prejudiced him presumes that had he requested a speedy trial, he would have been tried more quickly, or else his case would have been dismissed for failure to comply with speedy trial requirements in light of the *other two* speedy trial factors—the cause of the delay and the prejudice due to the delay. This presumption is not supported by the record.

■ Mr. Myszka or his counsel were responsible for much of the delay, and delay caused by a defendant is weighed heavily against him. *State v. Ivester*, 978 S.W.2d 762, 765 (Mo.App. E.D.1998); *State v. Robinson*, 696 S.W.2d 826, 832 (Mo.App. W.D.1985). Here, Mr. Myszka chose to represent himself until December 1995, at which point counsel was appointed for him.

He failed to move for a speedy trial prior to that time, and does not allege any impropriety in failing to proceed to trial prior to counsel's appointment. Certainly, he cannot claim counsel was ineffective in failing to move for a speedy trial before counsel was appointed.

At the time counsel was appointed in December 1995, trial was set for January 4, 1996, just a few weeks later. Movant does complain that counsel moved for a continuance from that date until April 1, 1996, without his permission. He says that this delay should not be counted against him since he did not agree to it. He concedes, however, that his counsel's motion said he did not object to the delay, and that he agreed to the second request for continuance from April 1, 1996 until June 17, 1996. Moreover, prior to trial, he never complained that counsel had requested a continuance without his permission.

■ In these circumstances, even were it true that counsel did not discuss the January to April 1996 continuance with him, that delay is still attributable to the defense rather than to the court or the prosecution, and thus would have weighed heavily against a claim of violation of his speedy trial rights. That makes sense, for Movant's real complaint, of course, is that counsel allegedly did not consult him before requesting a continuance, not that his speedy trial rights were violated. While failure to follow his client's instructions or to consult with his client about continuances may be relevant to other claims of ineffective assistance, he cites no case, and we are aware of none, which would suggest that these circumstances provide a reason not to count that delay against him for speedy trial purposes.

■ Second, the trial court was free to disbelieve Movant's claim that he did not agree to the initial continuance. After all, counsel had just been appointed, and made this request because of his unfamiliarity with Mr. Myszka and his case due to the

recent appointment, and because he believed that such a short period of preparation would not allow him time to adequately prepare to defend such a serious charge. In his motion, Mr. Allen stated that Movant was in custody and did not object to the continuance. Not only did Movant not express any disagreement with this request to the court, but he admits he agreed to another continuance from April to the trial date of June 17, 1996. On these facts, the trial court was free to disbelieve Movant's claim that he did not agree to the first three months continuance, and in fact the judge did say that he found Defendant's testimony as a whole not to be credible.

■ And, even had Movant not agreed to the January to April continuance, counsel's reason for requesting it was valid, since he needed the time to prepare a defense. Our courts have recognized that a continuance is not unreasonable when counsel is not prepared for trial, "regardless of defense counsel's awareness of the motion for a speedy trial." *Sams v. State,* 980 S.W.2d 294, 297 (Mo. banc 1998). Here, in addition, we have the fact that Movant failed to allege he ever apprised trial counsel of the anxiety he now claims to have suffered due to those continuances. Aware of his own lack of knowledge of the case, and unaware of any particular reason why a three month delay would cause undue anxiety to Movant, counsel was not unreasonable in requesting this continuance, and it is proper to count it against Movant.

Because all of the delay following appointment of counsel could be attributed to Movant or to valid reasons why counsel needed a continuance in order to prepare Movant's defense, the filing of a request for speedy trial would not have had any appreciable effect on Movant's trial date and counsel cannot be held ineffective in failing to file a speedy trial motion.

■ Finally, Movant failed to show that undue prejudice – the fourth prong of the speedy trial test—resulted from the alleged delay. He says that it caused him to be more anxious. He claimed that, had he not been under such anxiety, he would have told the jury that he and the decedent were planning to go camping, that for protection he customarily takes his gun with him on camping trips, and that, while packing the gun, it discharged, accidentally hitting and killing Ms. Rodriguez. However, he made no such assertion when both Mr. Allen and the court questioned him regarding his decision to waive his right to testify. In fact, the following exchange occurred at that point:

THE COURT: You understand if you want to testify now I'll give you that opportunity to reopen your case and testify.

DEFENDANT: I do not wish to testify, Your Honor. Thank you for your offer.

■ And, if the January to April continuance were the cause of so much anxiety, why did he agree to an additional two months delay, and how except based on speculation could we find that his undue anxiety was due to the first three months of continuance, rather than to the last two months of continuance? Finally, even if we presume that some additional anxiety resulted, "anxiety and concern exist in every criminal case, but 'that alone does not establish prejudice where, as here, the defendant neither asserts nor shows that the delay weighed particularly heavily on him in specific instances.'" *State v. Woodworth,* 941 S.W.2d 679, 694 (Mo.App. W.D. 1997); *State v. Joos,* 966 S.W.2d at 353; *State v. Fleer,* 851 S.W.2d 582, 597 (Mo. App. E.D.1993). While Movant claims he suffered anxiety, he offered no medical or other evidence to support this claim other than his own testimony

The trial judge could well find based on this evidence alone that, had the pressure and anxiety caused by Movant's incarceration during the initial continuance been so trying on his ability to testify as to his innocence, he would not have agreed to the

April 1, 1996, continuance, or would have raised this issue at trial, when waiving his right to testify, or when questioned after trial as to whether he was satisfied with counsel's representation. The trial court in fact did find Movant not to be credible.

For all of these reasons, the court below did not abuse its discretion in denying the claim of ineffective assistance based on failure to move for a speedy trial and based on the seeking of two continuances.

### B. Failure to Object to Improper Opinion Testimony.

■ Next, Movant argues that trial counsel provided ineffective assistance of counsel when he failed to object to the testimony of a prosecution witness, Larry Eubank. At trial, Mr. Eubank testified that when he gave Movant the .32 Derringer, Movant said, "You could make it look like someone committed suicide with a gun," and that a friend of his had made it look like his wife had committed suicide. Mr. Eubank also stated, "I feel partially responsible for this. I gave him the gun. And it is really hard for me to think about this." Movant argues these statements were improper opinion testimony that usurped the function of the jury to decide guilt or innocence. We disagree.

First, it is clear that the testimony of Mr. Eubank to which Movant now objects did not constitute opinion testimony concerning Movant's guilt or innocence. Mr. Eubank merely repeated Movant's statements and then expressed his deep regret that he in fact supplied the gun that admittedly was used to cause the death of Ms. Rodriguez. His words would have been appropriate regardless whether the death caused by the gun were found to be the result of murder, accident, or suicide, for the regret was as to the fact he had supplied the instrumentality for her death, not as to how it had been used or by whom. Consequently, Mr. Eubank's statements did not constitute improper opinion testimony as to Movant's guilt or innocence.

Thus, the jury's function to decide guilt or innocence was not usurped Mr. Eubank.

■ Secondly, Movant raised this same issue on direct appeal. We found it was not properly preserved, but reviewed for plain error, and found admission of this testimony did not constitute manifest injustice. *State v. Myszka*, 963 S.W.2d 19, 26–7 (Mo.App. W.D.1998). "[A] finding of no manifest injustice under the 'plain error' standard on a direct appeal serves to establish a finding of no prejudice under the test for ineffective assistance of counsel provided in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)." *State v. Clark*, 913 S.W.2d 399, 406 (Mo.App. W.D.1996). *See also State v. Chapman*, 936 S.W.2d 135, 141–42 (Mo.App. E.D.1996). Consequently, even were the failure to object to this evidence serious enough to constitute ineffective assistance (and we do not so hold), Movant has failed to make a sufficient showing of prejudice to satisfy the second prong of the *Strickland* test. *See Strickland*, 466 U.S. at 697, 104 S.Ct. 2052; *Meade*, 779 S.W.2d at 661 (both holding a court may proceed directly to determine whether movant is entitled to remand based on error without separately addressing appropriateness of counsel's conduct). Point denied.

### C. Failure to Raise Preserved Error on Direct Appeal.

■ In his final point, Movant argues that his appellate counsel was ineffective for failing to raise on direct appeal the preserved claim that the trial court erroneously admitted hearsay testimony. Decedent's son, J.D., stated at trial that the decedent had threatened to kick Movant out of the house if he did not stop drinking, and that his mother complained about Movant's drinking when Movant was not around.

As noted earlier, in order to show that counsel was ineffective, Movant must satisfy the two-pronged test set forth in *Strickland*. First, he must show that his lawyer

failed to exercise the customary skill and diligence that a reasonably competent lawyer would have exercised under the same or similar circumstances. Second, he must show that he was prejudiced by counsel's failures. *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052. Where, as here, the allegation of ineffectiveness is as to appellate counsel, in order to prevail:

> strong grounds must exist showing that counsel failed to assert a claim of error which would have required reversal had it been asserted and which was so obvious from the record that a competent and effective lawyer would have recognized it and asserted it.

*Graham,* 969 S.W.2d at 759. *Accord, Reuscher,* 887 S.W.2d at 591.

Here, we find that even if the allegedly objectionable admission of these statements had been raised by Mr. Wei on direct appeal, reversal would not have been required. This Court has held that, "[a] defendant suffers no prejudice and cannot complain about the admission of evidence over objection where similar evidence is admitted without objection." *State v. Nastasio,* 957 S.W.2d 454, 459 (Mo.App. W.D.1997). At trial, Mr. Jimmy Brooks, an acquaintance of Movant's from Alcoholics Anonymous, also testified, without objection, that, "Movant said Janice was getting ready to kick him out, if he don't quit his drinking." In light of Mr. Brooks' testimony, we find that Movant suffered no prejudice from the failure to raise this issue on appeal, as, if raised, it would not have required reversal. Movant is therefore not entitled to post-conviction relief. *See Strickland,* 466 U.S. at 697, 104 S.Ct. 2052; *Meade,* 779 S.W.2d at 661.

For all of these reasons, the trial court's denial of Movant's motion for post-conviction relief under Rule 29.15 is affirmed.

Judges VICTOR C. HOWARD and WILLIAM E. TURNAGE concur.