**STATE of Missouri, Respondent,**

v.

**Steven STIEGLER, Appellant.**

No. 25640.

Missouri Court of Appeals,
Southern District,
Division One.

March 19, 2003.

Nancy A. McKerrow, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, atty. Gen., and Leslie E. McNamara, Jefferson City, for Respondent.

ROBERT S. BARNEY, Presiding Judge.

Steven Stiegler ("Appellant") appeals the trial court's denial of his Motion for New Trial or, in the Alternative, For Judgment of Acquittal. Appellant was convicted by a jury of voluntary manslaughter, § 565.023; assault in the second degree, § 565.060; and two counts of armed criminal action, § 571.015.[1] He was sentenced to

---

1. All statutory references are to RSMo 2000, unless otherwise specified.

a total of 22 years' imprisonment. On appeal, Appellant argues that the trial court erred in denying his motion for judgment of acquittal because there was insufficient evidence from which the jury "could have reached a 'subjective state of near certitude'" that he had the necessary *mens rea* for the crimes charged. We affirm.

Viewing the evidence in the light most favorable to the verdict, *see State v. Bryan*, 60 S.W.3d 713, 716 (Mo.App.2001), the record reveals that on August 28, 2001, Appellant and several acquaintances spent the evening drinking at a local bar. At closing time, the group decided to continue drinking at Appellant's apartment, which he shared with his girlfriend, Lisa Frey ("Frey").[2] After arriving at the apartment, they continued to drink, several of them admittedly becoming quite intoxicated; marijuana was freely distributed. Thereafter, Appellant and Frey had a disagreement in the bathroom, which resulted in Appellant slapping Frey across the face. Emerging from the bathroom with her hand covering her face, Frey told the group that Appellant hit her. Appellant followed Frey into the living room and told everyone to leave.

In an effort to remove Frey from the situation with Appellant, Kenny Chase ("Chase"), who was temporarily staying with Frey and Appellant, took Frey out onto the second-floor walkway ("the balcony"). They remained on the balcony for several minutes with Twyla Sawyer ("Sawyer"), Ronnie Ice ("Ice"), and Ronnie Davault ("Davault"), as Frey cursed and yelled at Appellant. Frey then kicked at the apartment door, and Appellant opened the door. After Appellant emerged from the apartment, Ice told Appellant that he

should never "hit a woman." Appellant swung at Ice, and Ice punched Appellant in the face. Chaos then erupted as a fight ensued between Appellant and Ice as well as between Chase and Davault. Frey testified that, at some point, she jumped into the melee in an effort to get Ice off of Appellant, but she was knocked down and ultimately lost consciousness.

Davault told Ice that they needed to get away before someone called the police. As Davault and Ice turned toward the stairway to leave, Appellant came at Ice again and punched him in the stomach. The fight was renewed and during the scuffle Appellant stabbed Davault under his arm. Davault then made his way to the stairs, knowing that the rest of the group was waiting for them in the parking lot. As he started toward the parking lot, Davault heard Ice yelling. Davault went back up the stairs and saw Appellant standing over Ice stabbing him repeatedly. Davault knocked Appellant down and "got ahold of [Ice]" and had started down the stairs when Appellant stabbed Davault again.

Thereafter, Appellant threw the knife over the balcony and he and Chase fled the scene.

Meanwhile, Davault and Ice reached the parking lot and their friends called the police. When the police arrived, they discovered that both Ice and Davault were badly injured and that Frey had also been stabbed once. Davault told police that Appellant had stabbed him and Ice.

Appellant returned to the scene a short time later, was taken to the hospital, and was later arrested.

Ice died from his wounds the following morning, having been stabbed a total of seven times, including twice in the right

---

**2.** The people present at Appellant's apartment that night were Roseanne Johnson, Roger Rogowski, Ronnie Ice, Ronnie Davault, Twyla Sawyer, Lisa Frey, Kenny Chase, and Appellant.

thigh, twice in the groin, and once in the chest. Davault suffered a punctured lung, a cut artery, and a severed nerve, which led to permanent numbness in an arm and its fingers. Frey received a stab wound on her left buttock at the small of her hip.

Testifying in his own defense, Appellant asserted that Ice hit him first and that, thereafter, both Davault and Ice were attacking him at the same time. Appellant testified that he believed that they "could kill [him]," so he pulled his pocketknife out and stabbed Ice. He stated, "[Ice] kept hitting me, so I just kept stabbing until he was either pulled off of me or he fell off of me." Appellant testified that he wasn't trying to kill Ice, but that he "was afraid" and that he "didn't know what was going to happen...."

This Court's review of Appellant's challenge to the evidence is limited to a determination of whether there was sufficient evidence from which a reasonable juror might have found the Appellant guilty beyond a reasonable doubt. *Bryan,* 60 S.W.3d at 715. " '[A]ll evidence favorable to the state is accepted as true, which includes favorable inferences adduced by the evidence; all evidence and inferences to the contrary are disregarded,' " except in limited circumstances not applicable to the instant matter. *Id.* (alteration in original) (quoting *State v. Hayes,* 15 S.W.3d 779, 782 (Mo.App.2000)). " 'Questions of credibility of a witness and the effects of conflicts or inconsistencies in the testimony of any witness are questions for the jury.' " *Id.* at 715–16 (quoting *State v. Vaughn,* 32 S.W.3d 798, 799 (Mo.App. 2000)). "As such, ' "[a] jury is permitted to draw such reasonable inferences from the evidence as the evidence will permit, and may believe or disbelieve all, part, or none of the testimony of any witness." ' " *Id.* at 716 (alteration in original) (quoting *State v. Immekus,* 28 S.W.3d 421, 426 (Mo. App.2000)).

■ On appeal, Appellant asserts that Respondent failed to prove beyond a reasonable doubt that he "knew or was aware that his conduct was practically certain to cause death or serious physical injury."

As pertinent to the facts of this appeal, "A person commits the crime of assault in the second degree if he: ... (2)[a]ttempts to cause or knowingly causes physical injury to another person by means of a deadly weapon or dangerous instrument ...." § 565.060.1; *see Bryan,* 60 S.W.3d at 719 n. 5. Additionally, "[t]he crime of voluntary manslaughter is defined as causing the death of another person under circumstances that would constitute murder in the second degree, except that the death was caused 'under the influence of sudden passion arising from adequate cause.' " *State v. Redmond,* 937 S.W.2d 205, 208 (Mo. banc 1996) (quoting § 565.023, RSMo 1994).

Here, Jury Instruction No. 14, the verdict director for assault in the second degree, set out, in part:

As to Count III, if you find and believe from the evidence beyond a reasonable doubt:

That on or about August 29, 2001, in the County of Greene, State of Missouri, the defendant *knowingly* caused serious physical injury to Ronald Davault by stabbing him, and

Second, that defendant did not act in lawful self-defense as submitted in Instruction No. 20, then you will find the defendant guilty of assault in the second degree.

(Emphasis added.)

Similarly, Jury Instruction No. 7, the verdict director for voluntary manslaughter, read, in pertinent part:

As to Count I[, if] you find and believe from the evidence beyond a reasonable doubt:

First, that on or about August 29, 2001, in the County of Greene, State of Missouri, the defendant caused the death of Ronald Ice by stabbing him, and

Second, that defendant *knew or was aware that his conduct was practically certain to cause the death* of Ronald Ice or *that it was the defendant's purpose to cause serious physical injury* to Ronald Ice, and

Third, that defendant did not act in lawful self-defense as submitted in Instruction No. 19, then you will find the defendant guilty under Count 1 of voluntary manslaughter.

(Emphasis added.)

 "Our Criminal Code, which tracks the Model Penal Code, does not require proof that a defendant infallibly know that a certain result will follow in order to show the defendant acted 'knowingly.'" *State v. Harris*, 825 S.W.2d 644, 647 (Mo.App.1992); *see* § 562.016.3.[3] Direct evidence of the defendant's intent is rarely available, and intent is most often proven by circumstantial evidence. *State v. Agee*, 37 S.W.3d 834, 837 (Mo.App.2001). "A defendant's mental state may be reasonably inferred from the act itself." *State v. Theus*, 967 S.W.2d 234, 239 (Mo. App.1998).

 "[I]t will be presumed that a person intends the natural and probable consequences of his acts." *State v. O'Brien*, 857 S.W.2d 212, 218 (Mo. banc 1993). "A person is presumed to have intended that death follow acts which are likely to produce that result." *State v. Isom*, 906 S.W.2d 870, 874 (Mo.App.1995). "An 'in-

tent to cause serious physical injury can be inferred from the defendant's use of a deadly weapon on a vital area of a victim's body.'" *State v. Deckard*, 18 S.W.3d 495, 503 (Mo.App.2000) (quoting *State v. Tracy*, 918 S.W.2d 847, 851 (Mo.App.1996)). "'Even where evidence of a defendant's guilt is solely circumstantial, the evidence is sufficient to support a conviction if the evidence is such that a reasonable juror would be convinced beyond a reasonable doubt of the defendant's guilt.'" *Hayes*, 15 S.W.3d at 782 (quoting *State v. Myszka*, 963 S.W.2d 19, 23 (Mo.App.1998)).

Based on the foregoing precepts, we find that sufficient evidence existed from which the jury could find Appellant guilty of second-degree assault and voluntary manslaughter beyond a reasonable doubt.

The record shows that Appellant was the initial aggressor in this matter. Once the fight began, Ice and Davault made an effort to remove themselves from the situation. However, as they were walking away, Appellant again attacked Ice, knocking him to the ground. With Ice on the floor of the balcony, Appellant stabbed him repeatedly in his midsection and groin. Moreover, Appellant then stabbed Davault a second time as Davault was ushering the mortally wounded Ice down the stairs. No other evidence, save Appellant's own statement that he was in fear of his life, supports Appellant's claim that he did not intend to cause serious physical injury or know that his conduct was practically certain to cause death. The jury was free to disbelieve Appellant's testimony, as well as that of the other witnesses, and accept as true the evidence of the State. *See State v. Mishler*, 908 S.W.2d 888, 893 (Mo.App. 1995).

---

3. Section 562.016.3 provides that:
A person "**acts knowingly,**" or with knowledge,
(1) With respect to his conduct or to attendant circumstances when he is aware of the nature of his conduct or that those circumstances exist; or
(2) With respect to a result of his conduct when he is aware that his conduct is practically certain to cause that result.

While Appellant argues that the evidence upon which the State relies is not credible and should not have carried any weight due to inconsistencies, we reiterate, " '[q]uestions of credibility of a witness and the effects of conflicts or inconsistencies in the testimony of any witness are questions for the jury.' " *Bryan*, 60 S.W.3d at 715–16 (quoting *Vaughn*, 32 S.W.3d at 799). There is no requirement that the evidence be conclusive of guilt, nor exclude every hypothesis of innocence; it must be sufficient to support the verdict. *See State v. Martin*, 882 S.W.2d 768, 770 (Mo.App. 1994).

The judgment of the trial court is affirmed.

PREWITT, J. and GARRISON, J., concur.