STATE of Missouri, Respondent,

v.

**Cornell Ray MANLEY, Appellant.**

No. WD 66609.

Missouri Court of Appeals,
Western District.

May 15, 2007.

---

1. All Rule citations are to Missouri Rules of Civil Procedure (2007) unless otherwise noted.

ting a gun into evidence. In addition, Manley argues that the trial court plainly erred in sentencing him to twenty years for a Class B felony because by statute he could only be sentenced to a maximum of fifteen years.

For the reasons more fully set out below, we affirm the trial court's judgment in that there was sufficient evidence for a jury to find Manley guilty of first-degree assault, and the trial court did not abuse its discretion in admitting the gun into evidence. We reverse the trial court's sentencing, because, as the State has conceded, the trial court did not have the jurisdiction to impose a sentence in excess of fifteen years for a Class B felony. We remand the case only for re-sentencing within the range of punishment for a Class B felony.

Jeremiah W. (Jay) Nixon, Atty. Gen., Richard A. Starnes, Assistant Attorney General, Jefferson City, MO, for respondent.

Rosalynn Koch, Assistant State Public Defender, Columbia, MO, for Appellant.

Before Howard, C.J., and Ulrich and Newton, JJ.

VICTOR C. HOWARD, Chief Judge.

Cornell R. Manley appeals his convictions of the Class B felony of assault in the first degree, section 565.050,[1] and armed criminal action, section 571.015. Following a jury trial, Manley was sentenced to twenty years for assault and three years for armed criminal action. On appeal, Manley alleges that there was insufficient evidence to show that he was guilty of assault in the first degree and that the trial court abused its discretion in admit-

## Factual Background

Viewing the evidence in light most favorable to the verdict, *State v. Bryan,* 60 S.W.3d 713, 716 (Mo.App. S.D.2001), the record on appeal shows the following:

In the late evening of May 28, 2005, and into the early morning of May 29, Manley was at Hollywood's, a nightclub in Jefferson City. Manley was at the club with a friend who began to act disorderly toward some of the female patrons of the club.[2] The owner of Hollywood's, Frederick Townson, asked Manley's friend to leave and walked him out of the club. Manley followed behind and told Townson that he would take care of his friend. Townson told them that they were not to come back into the club.

A few minutes later, Townson saw Manley and his friend attempting to return to the club. Billy Anthony, the bouncer at

---

1. All statutory references are to RSMo (2000) unless otherwise noted.

2. His friend was allegedly fondling females at the club.

Hollywood's, would not allow them to re-enter. A scuffle ensued, and Townson had to physically remove Manley from on top of Anthony and take him outside of the club.

Manley was then seen walking over to a van that was parked across the street from the club. He came back across the street toward the club and raised a silver handgun. Townson testified that Manley was pointing the gun at either him or Anthony through the club's glass doors. Anthony also testified that the gun was pointed at him. Manley fired the gun, which shattered the door and struck Anthony in the calf.[3] Manley then "skipped" back to the car, got into the passenger side of the van, and his friend, who had been removed from the club, drove off.

Townson called the police, and Officer Eric Wilde, who was parked nearby, pulled the van over. After the van came to a stop, Manley exited the vehicle and Officer Wilde ordered him to the ground. When other officers arrived, Manley was placed in handcuffs and the driver of the van was also taken into custody. During the arrest, Officer Wilde saw a black semiautomatic handgun on the floorboard of the van. Following the arrests, a silver semiautomatic handgun, which was later identified as the gun that was involved in the shooting at Hollywood's, was found in the glove compartment in front of the passenger seat.

Manley was charged as a persistent misdemeanor offender with the Class B felony of first-degree assault and armed criminal action. At trial, Townson, Anthony, Office Wilde, another arresting officer, and a crime lab technician testified. Both guns were admitted into evidence. The jury returned verdicts of guilty on both counts. This appeal follows.

## Sufficiency of the Evidence

■ In his first point on appeal, Manley argues that there was insufficient evidence for the jury to find beyond a reasonable doubt that he "attempted to cause serious physical injury to Anthony." He points to Anthony's testimony at trial that the gun was "aimed downward."

In a first-degree assault case, the State must prove beyond a reasonable doubt that the defendant "attempt[ed] to kill or knowingly cause[d] or attempt[ed] to cause serious physical injury to another person." § 565.050. "Serious physical injury" is defined as "physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body." § 556.061(28). Manley alleges that the State failed to prove that he attempted to cause serious physical injury.

■ In assessing the sufficiency of the evidence, an appellate court must view the evidence, and all reasonable inferences to be drawn therefrom, in the light most favorable to the verdict. *State v. Grim*, 854 S.W.2d 403, 405 (Mo. banc 1993). "The relevant question is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Polson*, 145 S.W.3d 881, 887 (Mo. App. W.D.2004) (internal quotation omitted).

■ "Direct evidence of the defendant's intent is rarely available, and intent is most often proven by circumstantial evidence." *State v. Stiegler*, 129 S.W.3d 1, 4

---

**3.** Anthony did not realize that he had been shot until a few hours later when he noticed his foot was wet and, upon further inspection, realized it was soaked with blood from the gunshot wound.

(Mo.App. S.D.2003) (citing *State v. Agee,* 37 S.W.3d 834, 837 (Mo.App. S.D.2001)). A jury can infer the necessary intent from the "surrounding facts, such as the defendant's conduct before the act, from the act itself, and from the defendant's subsequent conduct." *State v. Chambers,* 998 S.W.2d 85, 90 (Mo.App. W.D.1999) (internal citation omitted).

■ It is also "presumed that a person intends the natural and probable consequences of his acts." *State v. O'Brien,* 857 S.W.2d 212, 218 (Mo. banc 1993). "A jury can infer intent to cause physical bodily harm when 'under the circumstances, the prohibited result may reasonably be expected to follow from a voluntary act, irrespective of any subjective desire on the part of the offender to have accomplished the prohibited result.' " *State v. Franklin,* 854 S.W.2d 55, 58 (Mo.App. W.D.1993) (quoting *State v. Kincade,* 677 S.W.2d 361, 364 (Mo.App. E.D.1984)).

Rational jurors could have concluded from the evidence that Manley attempted to cause Anthony serious physical injury. Although Manley fired the gun through the door, the jury could have inferred, based on the testimony of Townson and Anthony, that he was aiming the gun at Anthony. Anthony testified that he was hit in the face by glass from the door. The jury could have inferred that by shooting through a glass door, which Anthony was behind, while aiming the gun at Anthony, that Manley intended to cause him serious physical injury.

Manley's actions before the shooting also provide evidence of his intent. He was in a scuffle with Anthony. As a result of the scuffle, Anthony received a busted lip and a cut over his eye. As a result of the shooting, he had a bullet hole in his shin,[4] and he has had to apply for disability because of persistent swelling and infection in his leg. Swelling and infection are natural and probable consequences of being shot in the leg and are clearly "impairment of the function of any part of the body." In addition, Manley's actions following the shooting also provide evidence of his intent in that he attempted to flee from the scene.

■ Manley argues that since he was pointing the gun downward, he could not have intended to cause serious physical injury. However, the remainder of Anthony's testimony was that the gun was "[k]ind of aimed downward, but he hadn't completely lifted it up." During cross-examination, and after being questioned repeatedly about whether or not the gun was pointed at him, Anthony stated, "Yes, he was aiming at me." He answered affirmatively to the question of whether Manley was aiming at him as he raised the gun up and also to the question of whether as Manley was raising it up, when he was actually shot, if the gun was pointed down. "Questions of credibility of a witness and the effects of conflicts or inconsistencies in the testimony of any witness are questions for the jury." *Stiegler,* 129 S.W.3d at 3 (internal quotation and citations omitted). There was ample evidence from which a jury could find beyond a reasonable doubt that Manley intended to cause Anthony serious physical injury.

"Furthermore, the natural consequence of firing a deadly weapon, such as a pistol, in the direction of [the victim], in the absence of countervailing circumstances, 'is, at the very least, great bodily harm.' " *State v. Mann,* 129 S.W.3d 462, 467 (Mo. App. S.D.2004) (quoting *State v. Heitman,* 613 S.W.2d 902, 906 (Mo.App. W.D.1981)). Manley's first point is denied.

---

4. It was a straight-through shot.

## Admission of the Gun

■ In his second point on appeal, Manley alleges that the trial court abused its discretion in admitting the gun found in the van that was not connected to the shooting. He argues that the second gun had no probative value and its admission was inherently prejudicial.

■ "A trial court enjoys considerable discretion in the admission or exclusion of evidence, and, absent clear abuse of discretion, its action will not be grounds for reversal." *State v. Mayes,* 63 S.W.3d 615, 629 (Mo. banc 2001). "An abuse of discretion will not be found unless the trial court's decision in admitting the challenged evidence 'is clearly against the logic of the circumstances then before the trial court and is so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful deliberate consideration.'" *State v. Scurlock,* 998 S.W.2d 578, 587 (Mo.App. W.D.1999) (quoting *Oldaker v. Peters,* 817 S.W.2d 245, 250 (Mo. banc 1991)).

■ "The [S]tate is entitled to introduce evidence of the circumstances surrounding the offense charged." *State v. Hamilton,* 892 S.W.2d 371, 377 (Mo.App. E.D.1995) (citing *State v. Wacaser,* 794 S.W.2d 190, 194 (Mo. banc 1990)). The State is also allowed to present evidence that "paint[s] a complete picture of the crime charged and need not sift and separate the evidence." *Id.* (citing *State v. Henderson,* 826 S.W.2d 371, 374 (Mo.App. E.D.1992)). "Evidence is also admissible to explain an officer's conduct in making an arrest." *State v. Joos,* 966 S.W.2d 349, 354 (Mo.App. S.D.1998).

In this case, the gun that Manley now complains of was found first. Officer Wilde testified to the sequence of events in finding the first gun.[5] The admission of the gun was painting a complete picture of the sequence of events and the conduct of the officers while making the arrests and searching the vehicle. The trial court did not abuse its discretion in allowing the gun into evidence. Furthermore, Manley has failed to show that he was prejudiced by the introduction of the gun in that he has failed to show "when considered with and balanced against all of the evidence properly admitted, there is a reasonable probability that the jury would have reached a different conclusion. . . ." *State v. Roberts,* 948 S.W.2d 577, 592 (Mo. banc 1997). There was ample evidence presented from which the jury could have found Manley guilty of first-degree assault. Manley's second point is denied.

## Twenty–Year Sentence

■ In his final point on appeal, Manley argues that the trial court plainly erred in sentencing him to twenty years for a Class B felony of first-degree assault. The State agrees that the trial court did not have jurisdiction to sentence Manley to twenty years because the maximum sentence that Manley could have received for the Class B felony assault charge was fifteen years.

■ "Where it appears that a defendant has been improperly sentenced as a prior or persistent offender, plain error review is appropriate." *State v. Stephens,* 88 S.W.3d 876, 885 (Mo.App. W.D.2002). "A defendant cannot by waiver confer jurisdiction on the court to impose a sen-

---

5. The defendant did not object to the testimony of Officer Wilde regarding the first gun, only to the admission of the actual gun into evidence. As a side note, "[a] defendant suffers no prejudice and cannot complain about the admission of evidence over objection where similar evidence is admitted without objection." *State v. Nastasio,* 957 S.W.2d 454, 459 (Mo.App. W.D.1997).

tence not authorized by law." *State v. Prell*, 35 S.W.3d 447, 450 (Mo.App. W.D. 2000). "A sentence which is in excess of that authorized by law is beyond the jurisdiction of the sentencing court." *Id.*

"The persistent misdemeanor amendment to [section] 558.016 does not operate as an increase in Defendant's prison term. It merely removes sentencing from the jury and gives it to the judge. The judge is still bound by the terms of imprisonment authorized in [section] 558.011." *State v. Miller*, 851 S.W.2d 715, 717 (Mo.App. E.D. 1993). Section 558.011.1(2) authorizes a trial court to sentence a defendant for a Class B felony to a maximum of fifteen years. The trial court did not have jurisdiction to sentence Manley to twenty years for the charge of a Class B felony assault in the first degree. The sentence of the trial court is reversed, and the case is remanded for re-sentencing only.

### Conclusion

The judgment of the trial court is affirmed to the extent that there was sufficient evidence to find Manley guilty of first-degree assault and that the court did not abuse its discretion in admitting the second gun. The judgment of the trial court is reversed in regard to the length of the sentence. The case is remanded only for re-sentencing within the range of punishment for a Class B felony under section 558.011.1(2).

ULRICH and NEWTON, JJ., concur.