NO. 07-06-0350-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

FEBRUARY 15, 2008

_____


JOE ANGEL SALAZAR, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 286TH DISTRICT COURT OF HOCKLEY COUNTY;

NO. 04-08-5792; HONORABLE HAROLD PHELAN, JUDGE

_____

Before HANCOCK and PIRTLE, JJ. and BOYD.[1]

**MEMORANDUM OPINION**

Appellant, Joe Angel Salazar, was convicted by a jury of aggravated robbery and sentenced to fifteen years confinement and a $5,000 fine. Appellant contends the trial court erred in denying (1) his motion for a mistrial after the State prematurely disclosed two

_____

[1]John T. Boyd, Chief Justice (Ret.) sitting by assignment.

photographs to the venire, (2) his request for a bill of exception on the trial court's decision to deny his motion for a mistrial, and (3) his request to question the excess venire members remaining after peremptory strikes were taken regarding the State's premature photographic display. We affirm.

## Background

Appellant was indicted for aggravated robbery and charged with striking an eighty year old man, Billy Williams, with a shovel and stealing his cash. During the jury qualification process, but prior to any individual questioning by the district attorney or Appellant's trial counsel, the State inadvertently flashed two crime scene photographs on a six by ten foot screen situated in front of the jury panel. One photograph showed an elderly man with blood running down his face, and the other showed a bloody shovel. The projector showing the photographs was immediately shut off after the shovel photograph appeared on the screen. After learning about the public display of the photographs,[2] but before completion of the general qualification of the jury panel, Appellant requested a mistrial on the basis that the premature display of the two photographs was highly inflammatory and could significantly prejudice the jury pool. At that time, the trial court

---

[2]Appellant's trial counsel, Anna Ricker, was assisted during the jury selection process by Donny Yaddell, a local attorney. The display was observed by Yaddell while Ricker was before the bench with her back to the screen. Upon Ricker's return, Yaddell informed Ricker of the occurrence and she moved for a mistrial.

neither granted nor denied Appellant's motion for mistrial, but instead "deferred" a ruling on the matter.

After the completion of the general qualification of the jury panel, but still prior to any individual questioning by the district attorney or Appellant's trial counsel, the trial court gave the jury panel the following preliminary instructions:

> [t]here are a few general principles of law that I would like to review with you at this time. First is the burden of proof. Burden of proof rests solely with the State of Texas throughout this trial. Never, at any time, does it shift to the Defendant. The State of Texas must prove each and every element of the offense beyond a reasonable doubt. The Defendant is presumed to be innocent until guilt is established by legal evidence received before you in the trial of this case beyond a reasonable doubt. The above is part of the Defendant's presumption of innocence, as I mentioned a moment ago. Under our system of law, that presumption of innocence is so strong that unless the State proves each and every element of this case beyond a reasonable doubt, the presumption of innocence alone is more than sufficient for the jury to find the Defendant is not guilty. No proof of innocence of the defendant is required. The indictment in this case is not an indication of guilt of the Defendant. It is simply the legal means by which a person in Texas is brought to trial. The Defendant in this case, the Prosecution, the public and our system of justice all require that a fair jury, one without bias or prejudice, and free of opinion as to the guilt or innocence of the Defendant be chosen here today. A fair jury is one not having heard any of the evidence, that is not committed to either side. And a fair jury is one that is impartial to both sides and that can and will follow the law as given to it by the Court. At this time, the attorneys for each side are going to ask each of you some questions. . . . The questions are designed to determine if you can be a fair juror, or whether any bias or prejudice you may have about the law in this case or the facts as they may be presented to you will prevent you from following your oath as a juror.

The State then conducted its voir dire. During its voir dire, the State did not ask any questions about the public display of the two photographs. At the conclusion of its voir

3

dire, the State asked the jury panel the following questions and received the following responses:

> [Prosecutor:]  Is there something that I haven't gone over that is just . . . you are just festering on it, bothering you to the point where you think you should probably call it to my attention that you shouldn't be on this particular case? Anybody have anything here on the front row (and all successive rows)  that you think would cause you any difficulty?

> (No response.)

> [Prosecutor:]  Anything else that comes to mind that you feel like that you need to take up maybe in front of the judge privately?

> (No response.)

The Appellant then conducted his voir dire.  During voir dire, Appellant's counsel did not ask any questions about the public display of the two photographs; however, she did explore possible prejudices with the jury panel such as whether the prospective jurors would be affected if the victim were old versus young.  Appellant's counsel also gave a further explanation of the presumption of innocence and asked certain members of the jury panel the following questions and received the following responses:

> [Appellant's Counsel:]  If you had to vote right now as to whether my client is guilty or not guilty, and no evidence has been presented, how do you have to vote?

> [Venire Member:]  Not guilty.

> [Appellant's Counsel:]  Not guilty, exactly.  Because there has not been one bit of evidence.  Nothing I say, nothing [the prosecutor] says is evidence in this trial whatsoever.  Anybody here think that my client, just because he is sitting here and accused of a crime, ought to be found guilty?

4

.      Appellant's counsel also provided a further explanation of the State's burden of proof and asked the entire venire the following questions and received the following responses:

> [Appellant's Counsel:]  I want you each to promise me, and answer out, each of you, will you, throughout this entire proceeding, hear both sides of the case before making a decision?  Answer "yes" or "no."
>
> [Venire Panel:] Yes.
>
> [Appellant's Counsel:]  Okay.  Will you be vigilant and follow the instructions given to you by this Judge, Judge Phelan, and not allow passion or sympathy for the age of the victim to affect my client's guilt or innocence?  "Yes" or "no."
>
> [Venire Panel:]  Yes.

After the conclusion of Appellant's voir dire, the trial court granted a recess while the parties made their peremptory strikes.  Prior to the jury panel being reseated, Appellant again requested a mistrial.  The trial court heard testimony on Appellant's motion for a mistrial outside the presence of the jury panel.  Appellant's counsel called two witnesses, Yaddell, the attorney assisting with jury selection, and Kevin Davis, the District Attorney's investigator in charge of the photographic display.  Their testimony indicated two photographs were momentarily flashed on the screen situated in front of the jury panel. One photograph showed an elderly man with blood running down his face, and the other showed a bloody shovel.  During the hearing, Appellant's counsel requested that the trial court allow her to call the excess members of the venire remaining after all peremptory

5

strikes had been exercised to inquire whether they observed the photographs. The trial

court denied that request and Appellant's motion for mistrial.

Still prior to the seating of the jury, Appellant's counsel requested the opportunity

to make a "bill of review" by calling all members of the venire not selected as jurors to

determine what they may have seen.[3] The trial court denied that request. At that point,

Appellant's counsel reurged her motion for mistrial and request for a "bill of review." In

response, the trial court gave the following explanation:

> [t]here was no objection made at the time when it was–which it should have
> been. Your first motion should–should have been an objection, then you
> should have made a motion to admonish the panel to disregard it. You had
> an opportunity to inquire of the panel. You didn't say one word about it to
> see if it did affect them. So, we don't know. We are just–we are just
> speculating. And for that reason–and I am not going to sit here and listen to
> all those jurors one at a time to see whether or not they were inflamed by it,
> because I don't think they were.

## I.      First Point of Error - Mistrial

We review a trial court's ruling on a motion for mistrial under an abuse of discretion

standard. *Wead v. State*, 129 S.W.3d 126, 129 (Tex.Crim.App. 2004); *Murray v. State*,

172 S.W.3d 782, 784 (Tex.App.–Amarillo 2005, no pet.). The trial court's decision will be

upheld if it falls within the zone of reasonable disagreement. *Wead v. State*, 129 S.W.3d

---

[3]The terms "bill of review" and "bill of exception" are often confused. Although
Appellant's counsel requested a bill of review when the appropriate request should have
been a request for a bill of exception or an offer of proof, we believe that in the context of
the request the trial court was not confused.

at 129.  A mistrial is appropriate only for highly prejudicial and incurable errors, and it is within the discretion of a trial court to deny a mistrial when an instruction to disregard the matter would cure any resulting harm.  *Id.*  Under certain circumstances, an instruction to disregard may cure alleged harm arising from actions that purportedly taint a jury venire.  *Id.*

Where, as here, Appellant's first action was to move for mistrial, the scope of appellate review is limited to the question whether the trial court erred in not taking the most serious action of ending the trial.  *Young v. State*, 137 S.W.3d 65, 70 (Tex.Crim.App. 2004).  An occurrence that could have been prevented by timely objection or cured by an instruction to the jury will not lead an appellate court to reverse a judgment on appeal by a party that did not request these lesser remedies in the trial court.  *Id.*

In this case, Appellant's counsel did not make an objection or request that the venire panel be instructed to disregard the photographs; her sole request was for a mistrial. Neither did Appellant's counsel take advantage of her opportunity to question the venire panel during voir dire to determine whether they had observed the photographs or had been prejudiced by their premature display.[4]  Appellant has not shown the incident was of such a rare and extreme nature as to result in inherent prejudice, nor has he shown actual

---

[4]Appellant's counsel claims that, prior to conducting voir dire, the trial court had left her with the impression it would be conducting "a full blown hearing on the matter in order to determine what had occurred" at some later stage of the proceedings.  The record does not support this assertion.  The trial court simply deferred making a ruling on the motion.

prejudice.  It was incumbent upon Appellant's counsel to establish the facts on voir dire, and "[t]he failure of appellant to so inquire during the voir dire of the jury panel and present a challenge for cause waives any ground for error regarding the matter." *Jackson v. State*, 548 S.W.2d 685, 697 (Tex.Crim.App. 1977)*.*

Moreover, any prejudice that may have been caused by the premature disclosure could have been cured by a jury instruction.  The disclosure did not explain itself and came early in the proceedings before the presentation of any evidence or explanation of the charges against Appellant.  More importantly, if venire members observed the photographs, no one indicated during voir dire that their disclosure would influence their decision or cause them to be unfair toward Appellant.  Rather, the members of the venire indicated that, if they had to vote during voir dire, they would find Appellant not guilty, and promised to consider both sides of the case before making a decision.

In an abundance of caution, the trial court should have instructed the jury panel to disregard the photographs. That said, however, the trial court did, in its preliminary charge, instruct the venire on the defendant's presumption of innocence, the state's burden of proof, and the consequences of the State's failure to prove its case. This is the "functional equivalent" of the instruction that should have been requested after Appellant's counsel discovered the photographs had been disclosed. *See Reynolds v. State*, 686 S.W.2d 264, 267 (Tex.App.–Amarillo 1985, no pet.). Because the functional equivalent of the instruction

8

necessary to cure the error was given, any prejudice that might have resulted from the premature photographic display was cured.

Appellant's cases are inapposite. In *Haddad v. State,* 860 S.W.2d 947 (Tex.App.–Dallas 1993, pet. ref'd), the court determined that, even if a single reference to "organized crime" during voir dire could have been cured by a jury admonition, repeated references to "organized crime" by the prosecutor throughout the trial could not be cured by a jury instruction. *Id.* at 953-54. Here, we have a single disclosure of two photographs prior to the commencement of voir dire lasting only a few seconds. In *LaRosa v. State*, 414 S.W.2d 668 (Tex.Crim.App. 1967), the defendant was not permitted to complete his questioning of all prospective jurors due to an unrealistic time limitation. *Id.* at 670. Here, the trial court placed no limitation on the content of questions, or the time within which they could be asked. The voir dire by the State and Appellant's counsel continued uninterrupted from start to finish.

Accordingly, we find any prejudice that might have occurred from the photographic display was cured by the trial court's preliminary charge to the jury and the decision to deny the mistrial fell within the zone of reasonable disagreement. Point of error one is overruled.

## II. Second Point of Error - Bill of Exception

Appellant contends that, after his motion for mistrial was denied, the trial court erred by denying his counsel the opportunity to make a bill of exception by questioning the excess

venire members who remained after peremptory strikes had been taken to ascertain whether they had observed the photographic display. In support, Appellant cites Texas Rule of Evidence 103(b) for the proposition that his right to create a bill of exception was mandatory. Rule 103(b) states, in pertinent part, as follows:

> [t]he offering party *shall*, as soon as practicable, but before the court's charge is read to the jury, be allowed to make, in the absence of the jury, its offer of proof.

(emphasis added.)

Under Rule 103(b), a defendant has the absolute right to make an offer of proof or perfect a bill of exception when evidence is excluded. *See Allridge v. State,* 850 S.W.2d 471, 496 (Tex.Crim.App. 1991), *cert. denied,* 510 U.S. 831, 114 S.Ct. 101, 126 L.Ed.2d 68 (1993); *Spence v. State*, 758 S.W.2d 597, 599 (Tex.Crim.App. 1988). The instant case is not one in which Appellant has been denied the opportunity to present evidence or preserve the record, but rather, Appellant complains that the court denied his request to recall certain members of the venire for questioning. As such, Rule 103(b) does not apply. *Mata v. State,* 867 S.W.2d 798, 803 (Tex.App.–El Paso 1993, no pet.). Appellant's counsel had an opportunity to ask the entire venire questions related to the photographic display during voir dire, but failed to do so. Point of error two is overruled.

## III.   Third Point of Error - Voir Dire

Appellant contends the trial court erred by denying his request to extend or re-open[5] voir dire and permit his counsel to question the jury panel remaining after peremptory strikes were taken regarding the photographic display.  He asserts the trial court's denial violated his federal and state constitutional right to counsel and an impartial jury.

It is a well-established principle that the conduct of voir dire rests largely within the sound discretion of the trial court.  *Woods v. State,* 152 S.W.3d 105, 108 (Tex.Crim.App. 2004), *cert. denied,* 544 U.S. 1050, 125 S.Ct. 2295, 161 L.Ed.2d 1092 (2005).  The appropriate standard of review is whether the trial court abused that discretion, *Boyd v. State,* 811 S.W.2d 105, 115-16 (Tex.Crim.App. 1991), *cert. denied,* 502 U.S. 971, 112 S.Ct. 448, 116 L.Ed.2d 466 (1991), and "[t]he appropriate standard of harm is to disregard the error unless a substantial right has been affected."  *Woods,* 152 S.W.3d at 109-110.

Because Appellant's counsel had already been given the opportunity to question the venire regarding the photographic display and did not, and because the venire's responses during voir dire indicated no prejudice had resulted and the court gave the "functional equivalent" of the instruction necessary to diffuse any prejudice that might have resulted in its preliminary charge, we find the court did not abuse its discretion in refusing to grant

---

[5]Defense counsel's request came after voir dire had been completed and peremptory challenges were submitted to the trial court, but before the jury was seated and the remainder of the venire dismissed.

Appellant's request to extend, or re-open, voir dire.  Appellant's third point of error is overruled.

## **Conclusion**

Having overruled all of Appellant's points of error, the trial court's judgment is affirmed.

Patrick A. Pirtle
Justice

Do not publish.