**STATE of Missouri, Respondent,**

v.

**Everette HILL-MCAFEE, Appellant.**

No. ED 104342

Missouri Court of Appeals,
Eastern District,
DIVISION TWO.

Filed: June 20, 2017

344

Christine K. Lesicko, P.O. Box 899, Jefferson City, MO 65102, For Plaintiff/Respondent.

Kevin B. Gau, 1010 Market St. Ste. 1000, St. Louis, MO 63101, For Defendant/Respondent.

Colleen Dolan, Judge

## I. Introduction

Everette Hill-McAfee ("Defendant") appeals his convictions following a jury trial of first-degree statutory rape in violation of § 566.032 (Count I), first-degree statutory sodomy in violation of § 566.062 (Count II), second-degree statutory sodomy in violation of § 566.064 (Count III), first-degree statutory sodomy in violation of § 566.062 (Count IV), and second-degree statutory sodomy in violation of

§ 566.064 (Count V).[1] Following the jury's verdict, the trial court sentenced Defendant ·to serve 25 years in prison.[2] Defendant argues the trial court erred and abused its discretion by overruling Defense Counsel's objection to the following testimony: (1) V.J.'s (hereinafter "Mother") statements that Defendant had intermittent contact with D.J. (hereinafter "Victim") when he was little, (2) Mother's statements that she had not been in a position· to hire an attorney to deal with Victim's custody arrangement, and (3) Defendant's sexual partner Paris Powell's testimony ("Powell") that Defendant told her during intercourse that she enjoyed being molested as a child. We affirm.

## II. Factual and Procedural Background

Victim was born in 1998, and lived with Mother and his younger sister in St. Louis until the summer after his fifth-grade graduation in 2011. At this time, Victim went to live with Defendant (his father) in St. Louis until sometime in 2013. After staying with his aunt and grandmother for a brief period of time, he moved to Ohio to live with Mother. When Victim moved to Ohio to live with Mother, Victim told Mother that Defendant made him participate in several different sexual activities with Defendant and Defendant's sexual partners. Mother contacted the police and took Victim to a Child Advocacy Center where he was interviewed. Defendant and two of his female sexual partners, Niesha Hampton ("Hampton") and Powell, were subsequently arrested and charged with various crimes: statutory rape, sodomy, deviate sexual intercourse with a person less than fourteen years old, and child molestation.

At Defendant's trial, Victim, Mother, and Powell all testified against Defendant.

### A. Victim's Testimony:

Victim testified about the sexual abuse he suffered while he lived with Defendant. He stated that starting around the time he was eleven, Defendant would sometimes order him to participate in sexual activity with one of his two sexual partners. In describing the first time Victim was sexually abused, Victim asserted that he, Defendant, and Hampton were watching a movie when Defendant and Hampton began to kiss. Victim left the room, but Defendant called him back and asked, "Do you want to get in on this?" Victim told him "no," but Defendant told him to take his pants off. Victim testified that he took his pants off because he believed if he did not listen to his father, Defendant would grab him and forcibly remove his pants. After Victim removed his pants, Defendant directed him to put his penis in Hampton's mouth while Defendant and Hampton engaged in intercourse. The encounter ended when Victim ejaculated and left the room to clean himself off. Victim testified that afterwards he kept thinking "what just happened?" and "why did [Defendant] make me do this?"

A couple of months after the first incident, Defendant called Victim into a room and told him to suck on Hampton's nipples and lick her vagina. Defendant again directed Victim to take off his pants and put his penis in Hampton's vagina, which Victim did. Victim testified that the third incident occurred when Defendant and Hampton were engaging in sexual activity on a bed, and Defendant called Victim in and told him to suck on Hampton's nipples

---

**1.** All statutory citations are to RSMo 2000 as updated through the most recent cumulative supplement, unless otherwise indicated.

**2.** Defendant was sentenced to 25 years each for Counts I-IV and 7 years for Count V, with all sentences to run concurrently.

and vagina. Victim stated he did so, but he did not take his pants off.

Defendant later forced Victim to engage in similar sexual activity with Powell. Victim stated he was twelve or thirteen when he had his first sexual encounter with Powell and Defendant. Both Victim and Powell testified that Defendant told Victim to put his penis inside Powell's mouth, even though both Victim and Powell stated they did not want to do so. Each also stated that Powell got on top of Victim and sucked his penis while Defendant had intercourse with Powell. On a different occasion, when Victim was thirteen, he testified that, while Defendant was having sex with Powell, he told Victim to put his penis in Powell's mouth.

Victim testified there were other times when his father invited him to participate in sexual activities with him and one of his girlfriends, but Victim would decline and Defendant allowed him to leave. However, there were times when Victim would decline to participate but his father would still pressure him and "say to do it." Victim explained that he did not tell anyone about the sexual assaults until he was living with his Mother in Ohio because he "always keeps secrets," and he believed secrecy was necessary to protect himself from Defendant, whom he and Powell both characterized as "aggressive" at times. Victim testified that if he did not listen to Defendant, then Defendant would either yell at him, give him warnings, smack him, or "get mad and start hitting" him.

### B. Mother's Testimony:

Mother told the jury about the timeline of Victim's childhood, how he had lived with her up until he was ten or eleven and then moved in with Defendant.[3] She stated

that Defendant was not around a lot when Victim was a small child. She further testified that while she had supervised visitation with Victim while he lived with Defendant, she only saw him once, even though she came to visit him multiple times. She explained that she did not have the money to pay an attorney to sort out the custody issues.

### C. Powell's Testimony:

In addition to the testimony described above, during Powell's examination, the prosecutor asked her if Defendant had ever made any statements to her about something that happened in her childhood. The court allowed Powell to respond, over Defense Counsel's objection, that Defendant knew she had been sexually molested as a child, and while they were having sex would ask "if I liked how I was being molested, you know, just to, I guess, get his nut off, and I didn't like that."

The jury convicted Defendant of all submitted counts and the court sentenced him to a total of 25 years' imprisonment. This appeal follows.

### III. Standard of Review

■ Determination of the relevancy and admissibility of evidence is a matter clearly within the discretion of the trial court and will not be reversed in the absence of an abuse of that discretion. The trial court abuses its discretion when its ruling is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration. We will reverse only when the error was so prejudicial that it deprived the defendant of a fair trial, meaning that there is a reasonable probability that the result of the trial would

---

**3.** Defendant removed Victim from Mother's home after learning that Victim claimed a babysitter had touched him inappropriately.

The circumstances behind Victim leaving his Mother's home were not discussed in front of the jury in this case.

have been different had the evidence not been admitted.

To be admissible, evidence must be logically and legally relevant. Evidence is logically relevant if it tends to make the existence of a material fact more or less probable. Evidence is legally relevant when its probative value outweighs any prejudice.

*State v. Davis*, 474 S.W.3d 179, 188 (Mo. App. E.D. 2015)(internal quotations and citations omitted). Additionally, "[t]he State is entitled to introduce evidence of the circumstances surrounding the offense charged" to "paint[ ] a complete picture[.]" *State v. Manley*, 223 S.W.3d 887, 892 (Mo. App. W.D. 2007) (citing *State v. Hamilton*, 892 S.W.2d 371, 377 (Mo. App. E.D. 1995)).

## IV. Discussion

**a. Point I—The trial court did not abuse its discretion in overruling Defense Counsel's objection to Mother's testimony that Defendant only had intermittent contact with Victim when he was little.**

▆▆▆▆ Defendant alleges that the trial court erred in overruling Defense Counsel's objection because the introduction of this testimony violated his due process right to a fair trial, in that such testimony was not relevant to the crimes charged and prejudicially implied Defendant was a "deadbeat dad." "If proffered evidence causes prejudice wholly disproportionate to the value and usefulness of the offered evidence, it should be excluded." *State v. Smith*, 32 S.W.3d 532, 546 (Mo. banc 2000) (internal citations omitted). "A trial court's ruling concerning whether the probity of offered evidence is outweighed by its prejudicial effect will not be disturbed absent an abuse of discretion." *Id.* A court has broad discretion in determining whether to admit or exclude evidence. *State v. Hunt*, 451 S.W.3d 251, 263 (Mo. banc 2014). "The

trial court is in the best position to weigh the probative value of the evidence against its prejudicial effect." *State v. Taylor*, 504 S.W.3d 116, 122 (Mo. App. E.D. 2016) (internal citations omitted).

During trial, the prosecutor asked Mother "What was the Defendant's relationship or his contacts with [Victim] during the time [Victim] was little?" Defense Counsel objected to this question as irrelevant, but the trial court overruled the objection, allowing Mother to answer. Mother told the jury that: "He was in and out. He'll stop by, see him, little visit with him and his family, and then a week or so or probably a couple of months or so wouldn't see him for a while, wouldn't talk to him."

On appeal, Defendant argues this response "was totally irrelevant to the facts at issue, serving only to impeach [Defendant's] character as a dad based on conduct that occurred years before the charge period." Defendant maintains that the jury presumed he was a "deadbeat dad" from this testimony and thus its probative value, if any, was outweighed by its prejudicial effect. We disagree. We find the probative value of Mother's statements are not outweighed by any prejudicial value. Mother did not testify Defendant was a "deadbeat dad" or uninvolved in his son's life when Victim was a small child. She stated that he would periodically visit and spend time with Victim. The prejudicial value, or the risk of the jury assuming from this testimony that Defendant was a bad father and holding it against him when determining his guilt, is *de minimis*. Overruling Defense Counsel's objection and admitting Mother's testimony was not clearly against the logic of the circumstances or so unreasonable as to indicate a lack of careful consideration, therefore the trial court did not abuse its discretion. Point denied.

**b. Point II—The trial court did not abuse its discretion in overruling Defense Counsel's objection to Mother's testimony that she had not been in a position to hire a lawyer to deal with Victim's custody issues.**

 Defendant alleges that the court erred in overruling Defense Counsel's objection because the introduction of this testimony violated his due process right to a fair trial in that such testimony was not relevant to the crimes charged and implied that Defendant was preventing Mother from seeing Victim.

During direct-examination Mother testified she had supervised visitation with her son and went to several pre-scheduled visits, but her son was only present once. The prosecutor then asked Mother "were you in a position to hire a lawyer and deal with the custody issue?" Defense Counsel objected to the relevance of this testimony and a sidebar was held. The court stated it would allow some inquiry but warned the prosecutor not to go into it too deeply. The following exchange occurred:

Q. Were you in a position to hire a lawyer and deal with the custody issues?

A. No.

Q. Okay. So you were not able to deal with the custody issues in court. Did you try to see [Victim]?

A. Yes.

Q. Were you able to see him?

A. No.

Q. Okay. And why is that?

A. Mostly his saying—I had the police called a few times and they told me because we didn't have a set custody agreement, that if he said I couldn't see him, I couldn't see him.

Mother then testified that she had one phone conversation with Victim and they also communicated over Facebook. On appeal, Defendant argues this whole line of questioning was totally irrelevant and only served to impeach his character as a cruel dad who blocked Mother's visitation rights with Victim.

 "The test for [logical] relevancy is whether the offered evidence tends to prove or disprove a fact in issue or corroborates other relevant evidence." *Smith*, 32 S.W.3d at 546 (internal citations omitted). In this case, the prosecutor's first witness was Victim, and she asked him whether he told anyone about the abuse when he lived with his father, and whether he talked to his mom on Facebook. Asking Mother about the form and frequency of communication with her son served to corroborate Victim's testimony and explain why Mother did not know about the abuse, and therefore did not take any preventive measures, for three years. This testimony helped the jury understand the circumstances surrounding the events and get a complete picture of the charged crimes. *Manley*, 223 S.W.3d at 892.

Moreover, we are unpersuaded by Defendant's assertion this testimony "serv[ed] only to impeach [his] character as a cruel dad who would illegally bar a mom's visitation rights with their son," thereby "soften[ing] the jurors to believe that [Defendant] was ... capable of doing something 'disgusting' and 'unimaginable' with [Victim]." We fail to see how a reasonable juror would make this logical leap. If anything, it is more likely that the fact that there was evidence of a "custody dispute" in which the judicial system favored Defendant having custody of Victim over Mother would positively impact the jury's view of his character. Accordingly, we do not find Defendant was substantially prejudiced by Mother's testimony.

Accordingly, we find this evidence was logically and legally relevant in that it tended to explain why the Victim did not

tell anyone about the abuse for a period of years. Its probative value was not outweighed by its prejudice and admitting it was not an abuse of discretion. Point denied.

c. **Point III—The trial court did not abuse its discretion in overruling Defense Counsel's objection to Powell's testimony that Defendant would talk to her during intercourse about how she enjoyed being molested as a child.**

Defendant argues that the court erred in overruling Defense Counsel's objection because the introduction of this testimony violated his due process right to a fair trial because the testimony was not relevant to the crimes charged and implied Defendant was aroused by child molestation victimhood, which prejudiced him. During the trial, the prosecutor asked Powell "during sex, did the Defendant ever say anything to you about some prior experience you might have had?" Defense Counsel objected and the following discussion was held at sidebar.

The Court: Your objection, go ahead.

Defense Counsel: Judge, I believe the State is trying to ask [Powell] about the Defendant making comments about her previous experience being molested and kind of acting that out. I'm going to object. It's irrelevant to the charges and highly prejudicial.

Prosecutor: But essentially—

The Court: Give me a proffer.

Prosecutor: The evidence would be that while—that she had disclosed to him that she—

The Court: She disclosed to the Defendant?

Prosecutor: —yes, that she had been molested as a child; and during sex he said to her, you know you liked it when that guy did those things to you when you were a child, you know you liked it; and said some very perverted things while he was aroused having sex with her about her being molested and I think it's absolutely relevant under these circumstances.

The Court: I'll allow it.

Powell then explained to the jury that she had told Defendant she had been molested as a child, and during sex he would ask "if I liked how I was being molested, you know, just to, I guess, get his nut off, and I didn't like that." While we agree with the Defendant that there was prejudicial value in this elicited testimony,[4] we disagree that its prejudicial value outweighed its probative value. This testimony had probative value because it tended to demonstrate Defendant's motive—sexual gratification/arousal. The State is permitted to offer relevant evidence of "motive, intent, absence of mistake or accident, common scheme, or identity." *State v. Slagle*, 206 S.W.3d 404, 411 (Mo. App. W.D. 2006) (citing *State v. Sladek*, 835 S.W.2d 308, 311 (Mo. banc 1992)). The State's position in this case was that Defendant had forced his own son to repeatedly participate in sexual acts with him and his sexual partners against his will. The State had to explain Defendant's motivation and it chose to do so by using his own words against him. He made statements to a witness which implied he was aroused by acts of sexual molestation. This was highly probative evidence in that the testimony tended to make the fact that Defendant would molest his own son, repeatedly, more likely.

Additionally, "we will only reverse when the [improper admission of evidence] was so prejudicial that it deprived the

4. The State characterized it as "perverted" during its proffer.

defendant of a fair trial." *Taylor*, 504 S.W.3d at 122. Prejudice occurs when the admission of the evidence was "more likely than not" outcome-determinative. *Id.* In this case the jury heard specific and extensive evidence from Victim and Powell that Defendant repeatedly forced his son—from the time he was eleven to thirteen years old—to participate in sexual activities with himself and his partners against Victim's will. Therefore, we do not find that the admission of the Defendant's statements to Powell regarding molestation were outcome-determinative. The trial court's decision to admit such evidence was not against the logic of the circumstances and does not indicate a lack of careful consideration. Point denied.

## V. Conclusion

For the foregoing reasons, the order and judgment of the trial court is affirmed.

Sherri B. Sullivan, P.J., concurs.

Roy L. Richter, J., concurs.